STATE OF NEBRASKA, APPELLEE, V. LEE OTIS MARSHALL, APPELLANT.

446 N.W.2d 733

Filed October 13, 1989.   No. 88-558.

Hal W. Anderson, of Berry, Anderson, Creager & Wittstruck, P.C., for appellant.

Robert M. Spire, Attorney General, and LeRoy W. Sievers for appellee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Defendant, Lee Otis Marshall, appeals from a May 26, 1988, order of the district court for Lancaster County denying his motion for postconviction relief.

The record shows the following. On October 4, 1977, in Lancaster County, defendant entered pleas of not guilty and not guilty by reason of insanity to the charge of first degree murder in the killing of Wilson Eugene Field IV while in the perpetration of a robbery on August 11, 1977. On January 16, 1978, defendant and his counsel appeared before a judge of the district court for Lancaster County for the stated purpose of withdrawing his pleas. Defendant informed the court that he, the defendant, had called a lawyer friend in Phoenix, who had advised the defendant to request a conference with the defendant, his lawyer, the prosecuting attorney, and the court. The court told defendant that defendant was free to talk to his attorney and free to confer with his attorney and the prosecuting attorney, but that the court would not engage, as a judge, in any such conference. Defendant requested more time "to talk with [his] lawyer," and the court continued the hearing until 4:30 p.m. the next day.

On January 17, 1978, defendant and his counsel, together with the Lancaster County chief deputy county attorney, again

appeared before the court. Defendant and his counsel asked leave to withdraw defendant's previous pleas of not guilty and not guilty by reason of insanity. After inquiries directed to the defendant, the court granted leave to defendant to withdraw his previous pleas, and the hearing then proceeded to rearraignment.

The deputy county attorney again read the information to defendant. At the court's request, the deputy county attorney and defendant's counsel set out the plea agreement between the State and defendant. That agreement was that if the defendant pled no contest to the charge, the State would recommend to the court that defendant not receive the death sentence because the State felt that "when the Court sees all of the evidence relevant to the offense and the defendant's situation, that it is likely to find that the mitigating circumstances outweigh any aggravating circumstances." There was a further agreement that if the court did not accept the State's recommendation, defendant would be permitted to withdraw his plea and the case would proceed to trial.

The court then explained to defendant the meaning of a no contest plea. Defendant then stated to the court, "They got down [in the information] 'in the perpetration of a robbery.' Well, I'm not denying that I didn't [sic] kill him, but I am denying I wasn't [sic] robbing the man." When asked what the plea of no contest meant to him, defendant stated to the court, "My understanding is that I'm not pleading not guilty but I can't contest against the State's evidence and that anyway, after a trial, most likely that I would be found guilty anyway."

The court then reexplained, in detail, the meaning of a no contest plea, and defendant's questions were answered by the court. The court then requested the deputy county attorney to state a factual basis for the proposed plea. The attorney was sworn and stated that the State's evidence would show that defendant and his girlfriend, Bonnie Brooks, had broken off their relationship on August 9, 1977, after Brooks told defendant she did not wish to see him any more. Defendant apparently lost his temper and damaged the Brooks house. On the morning of August 11, defendant talked to a female acquaintance who was a worker at an employment service in the

YMCA building in Lincoln. This worker saw that defendant was carrying a concealed object in his pant leg. During their conversation, defendant told the worker that she would not see him again and that he was going to rob a store. The deputy county attorney stated that the other evidence would show that in the afternoon of August 11, defendant went to the residence of Brooks, threw $100 in cash on a table, and said this was to pay for the damage he had done to the Brooks house.

Other evidence would show that defendant had been hired a few days before August 11, 1977, by Field, who owned and operated a floral shop at 48th and Calvert Streets in Lincoln. In the afternoon of August 11, defendant drove a car belonging to Field's Floral Shop into the Lancaster County sheriff's garage, where he immediately volunteered to a deputy sheriff that defendant had just "clubbed" his boss, Field, and that he was sure the man was dead. Defendant was advised of his *Miranda* rights and later, at the Lincoln police station, gave the following answers to questions addressed to him:

[Q:] Okay, going back to what occurred in the florist shop, did you come up from behind the man that owned the flower shop?

[A]: Yeah.

[Q]: Do you think he even saw you?

[A]: He didn't see me, when I hit him he turned around and started screaming and I just wanted to hit him once right then and knock him out and I didn't want to kill him.

[Q]: Okay, how many times did you hit him?

[A]: Three or four times.

[Q]: Three or four times?

[A]: I just hit him until he stopped screaming, that's all .
. . .

Field was found that afternoon at the floral shop, covered with blood, but still conscious. He died the following morning at Bryan Memorial Hospital of injuries resulting from numerous blows to the head. A metal bar approximately 18 inches long was found lying on the counter of the store near the cash register. All the cash, consisting of approximately $100, was missing from the register.

In response to a question from the court, defendant's counsel

advised the court that defendant had been seen on three occasions by a psychiatrist selected by defense counsel and that in the opinion of the psychiatrist, defendant was competent to stand trial and had no mental illness that would prevent defendant from fully understanding the plea he was making.

After defendant's plea of no contest, the court stated:

> All right. On the basis of the proceedings and testimony this afternoon, the Court finds that the plea is freely and voluntarily made, with full realization of the consequences, after full and fair opportunity for consultation with counsel, that the plea was made at a time when the defendant was free of any affects [sic] of drugs or intoxicants, that he was, according to the representation of his counsel as to previous mental examinations, that he is not only competent at this time, but at the time of the offense, that the facts tendered by the State through the testimony of Mr. McGinn support a finding of guilty.

Throughout the rearraignment, defendant stated he understood all that was said by the deputy county attorney. Before the court accepted defendant's plea, the trial court meticulously explained to defendant all of the constitutional rights in an arraignment that completely complied with our later holding in *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986). The court determined that defendant understood those rights and held defendant's plea was free and voluntary.

After a presentence investigation, the court sentenced defendant to life imprisonment. Defendant appealed the sentence. Counsel representing defendant at that time determined that the appeal was frivolous and filed a motion and brief seeking to withdraw from the case following the procedure set out in *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967). The motion to withdraw was granted and defendant's sentence affirmed by this court in *State v. Marshall* (case No. 42071, June 19, 1978).

No further appeals were taken until October 7, 1987, when defendant filed a pro se motion to vacate his sentence pursuant to Nebraska's Postconviction Act, Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1985). The trial court denied a hearing on all but

2 of the 20 allegations because the files and records of the case showed to the court's satisfaction that defendant was not entitled to relief on those grounds.

The court did grant an evidentiary hearing on two allegations and appointed counsel to represent defendant at that hearing and on this appeal. Those allegations were set out in paragraphs 8 and 12 of defendant's pro se motion and alleged that defendant's counsel was ineffective in not objecting to the deputy county attorney's negotiating with defendant in the absence of defendant's counsel. A hearing was held on those allegations. Following the hearing the trial court found that defendant's trial counsel was not ineffective; that no representative of the Lancaster County Attorney's office had ever discussed the then pending case with defendant in the absence of defendant's counsel; that defendant's plea of January 17, 1978, was made freely, voluntarily, and intelligently; that defendant was not entitled to relief based on his allegations in paragraphs 8 and 12 of his motion; and that the files and records of the case showed that defendant was not entitled to a hearing or relief on the other allegations of his motion. The court denied defendant's motion for postconviction relief.

Defendant timely appealed, assigning four errors, which can be consolidated into two. Defendant contends that the trial court erred (1) in denying his motion for postconviction relief on the matters considered at the evidentiary hearing and (2) in denying an evidentiary hearing on the other matters raised in the motion. We affirm.

With respect to the first assignment of error, an evidentiary hearing was held on May 23, 1988, concerning defendant's allegation that his plea was involuntary because his counsel was ineffective in failing to object to the deputy county attorney's action in negotiating with defendant in the absence of defendant's counsel. Defendant testified that he pled no contest because he was under duress resulting from pressure by the deputy county attorney in talking to and threatening defendant when defendant's counsel was not present, and that defendant's counsel knew of such improper conduct. Defendant's only evidence that such threats were made was his own testimony. He

testified that on January 16, 1978, the deputy county attorney told him, outside defendant's counsel's presence, that the State would seek imposition of the death penalty if defendant did not plead guilty to the felony murder charge.

Defendant's counsel testified that he knew of no such improper conduct and that he met with defendant the evening of January 16, and defendant did not mention the conversation he allegedly had earlier that evening with the deputy county attorney. The deputy county attorney testified that at no time did he meet with or speak to defendant outside the presence of defendant's counsel.

In an evidentiary hearing for postconviction relief, the trial judge, as the trier of fact, resolves conflicts in evidence and questions of fact, including the credibility and weight to be given the testimony of a witness, and the trial court's findings will be upheld unless the findings are clearly erroneous. *State v. Wiley*, 232 Neb. 642, 441 N.W.2d 629 (1989). The trial court found that no "member or representative of the County Attorney's Office ever had any . . . discussions . . . with defendant outside the presence of defense counsel." In light of the above testimony, we cannot say that the trial court's evidentiary findings are clearly erroneous, and we determine that the evidence fully supports the court's findings. Defendant's first assignment of error is without merit.

Defendant's second assignment of error concerns the allegations made in his motion on which no evidentiary hearing was held. Defendant contends that an evidentiary hearing should have been granted on the other allegations, all of which concerned the voluntariness of defendant's plea or the effectiveness of his counsel.

While defendant makes the general allegation that the trial court erred in not granting an evidentiary hearing on all the allegations in his postconviction motion, his brief specifically discusses only some of those allegations.

At page 10 of his brief, defendant states, "The record shows no order for examination of Appellant by psychiatrists to determine his competency either for trial or to enter any plea." It is clear that the court did not order any psychiatric examination to determine defendant's competency for trial or

to plead, but it is equally clear that at the time of defendant's plea on January 17, 1978, defendant's counsel specifically informed the court that defendant had been examined on three occasions by a practicing psychiatrist in Lincoln, chosen by defendant's counsel, and the conclusion of that doctor was that defendant "is not incompetent to stand trial, that he is not in any way mentally deficient, has no mental illness which would prevent him from knowing and understanding the things he intends to do." Defendant stated on the record that he agreed with the conclusion of that doctor. The fact that the court did not order evaluations which were made is of absolutely no consequence.

At the time of the rearraignment the court was not aware of the previous psychiatric examinations of defendant, and the court had arranged for an examination of defendant by another psychiatrist. That examination was conducted on January 23, 1978. The report of that examination was included in the defendant's presentence investigation and was available to both the court and defendant before sentencing in the case. After examination, the second psychiatrist found that "[t]he subject [defendant], in my opinion, is legally competent to stand trial and was legally sane at the time of the commission of his offense." Defendant's contentions on this point are frivolous.

Defendant also contends that his plea was not freely given but, instead, was the result of coercion by the court as an active participant in plea negotiations taking place in open court. Our examination of the 56-page arraignment and rearraignment of defendant shows that the original trial court scrupulously protected all the constitutional rights of defendant and fully explained all those rights to defendant. The record is clear that the original court did not coerce defendant in any way. The evidence that defendant's plea was free and voluntary is without any contradiction in the record before us.

Defendant specifically contends that an evidentiary hearing should have been granted because of the ineffectiveness of counsel because counsel (1) failed to obtain a determination of his competency to stand trial or to enter a plea, (2) improperly advised him to enter a plea contrary to his desire for a jury trial, and (3) failed to represent him on direct appeal.

To maintain a claim of ineffective assistance of counsel, defendant must show counsel's performance was deficient and that the deficiency prejudiced defendant. *State v. Bostwick, ante* p. 57, 443 N.W.2d 885 (1989); *State v. Gagliano*, 231 Neb. 911, 438 N.W.2d 783 (1989).

As shown above, defendant's counsel had defendant examined three times before defendant's plea on January 17, 1978. Defendant's statement that his counsel "failed to obtain a determination of his competency" is an absolute misstatement of fact. The bill of exceptions further shows that counsel's advice was not contrary to defendant's wishes. There is nothing in the record to substantiate defendant's claim that he sought to exercise his right to a jury trial. The record shows that counsel acted competently in advising defendant to negotiate a plea, given the facts of the case. Those facts showed that the evidence against defendant was overwhelming. A plea will be found to be freely and voluntarily entered upon the advice of counsel if the advice was within the range of competence demanded of attorneys in criminal cases. *State v. Wakeman*, 231 Neb. 66, 434 N.W.2d 549 (1989).

Defendant's argument that counsel improperly withdrew from the case is also without merit. Counsel's withdrawal was considered and granted by this court in *State v. Marshall* (case No. 42071, June 19, 1978). That question is entitled no further review.

All of the allegations in defendant's postconviction motion have been examined, and none have merit. An evidentiary hearing may be denied on a motion for postconviction relief when the records and files in the case affirmatively establish that the defendant is not entitled to relief. *State v. Threet*, 231 Neb. 809, 438 N.W.2d 746 (1989). See, also, *State v. Reddick*, 230 Neb. 218, 430 N.W.2d 542 (1988). The files and records show that defendant received effective counsel and that defendant's plea was voluntary and made after a proper arraignment.

The trial court did not err in refusing to grant an evidentiary hearing on all of the issues raised in defendant's motion for postconviction relief, and the trial court did not err in refusing to grant relief on the two issues submitted at the hearing.

The judgment of the district court is affirmed.

AFFIRMED.