STATE OF NEBRASKA, APPELLEE, V. DARRELL JOHNSON, APPELLANT.

551 N.W.2d 742

Filed June 25, 1996. No. A-95-444.

Thomas R. Lamb and Amie C. Martinez, of Anderson, Creager & Wittstruck, P.C., for appellant.

Don Stenberg, Attorney General, and Barry Waid for appellee.

HANNON, SIEVERS, and MUES, Judges.

SIEVERS, Judge.

Darrell Johnson appeals from the district court's denial of postconviction relief after holding an evidentiary hearing on Johnson's motion for relief. Johnson was charged with two counts of committing incest with his daughter, in violation of Neb. Rev. Stat. § 28–703 (Reissue 1995). As part of a plea bargain, Johnson pled guilty to one count. During the plea hearing, Johnson's attorney put into evidence a copy of a psychiatrist's report which said that Johnson was incompetent to stand trial; however, Johnson's attorney did not file a motion for or otherwise request a hearing on competency, and the district court did not hold a separate hearing sua sponte. Johnson alleges his trial counsel was ineffective because he did not raise the issue of competency or insanity with the court.

## STATEMENT OF FACTS

Darrell Johnson was charged with having sexual intercourse with his daughter in the family home between July 1 and August

31, 1991. On March 12, 1993, Johnson was charged with two counts of incest. Trial counsel was retained for Johnson. Johnson was arraigned on March 16, 1993, and the court entered not guilty pleas on his behalf.

In his testimony during the postconviction relief hearing, Johnson's trial counsel stated that he discussed the issue of Johnson's competency several times with Johnson and his parents. Johnson's attorney stated that Johnson did not want to raise the issue. The attorney's testimony was that

> [w]e kept proceeding, and we would go from one meeting to the next and Mr. Johnson, Darrell, would kind of indicate that maybe he didn't understand what I said the first time. So we would repeat it. Eventually, it came down to asking Dr. Gutnik, Bruce Gutnik, in Omaha to perform an evaluation which included a determination with regard to competency to stand trial.

Dr. Bruce Gutnik examined Johnson on August 16, 1993, approximately 15 days before Johnson's plea hearing, and authored a written report dated August 26, 1993. Dr. Gutnik diagnosed Johnson as suffering from posttraumatic stress disorder and dissociative disorder, with associated paranoia. Dr. Gutnik noted that Johnson stated that his actions in his past were "as if someone else took his place. At times he speaks about himself in the third person stating that he did this or he did that." Johnson, born in 1948, reported to Dr. Gutnik that he was supposed to be 23 years old and did not understand how he got to 1993. Johnson was under the belief that he had been in Vietnam and was hypnotized by the Army, and that as a result he " 'lost 20 some years.' " Dr. Gutnik stated that Johnson was not "feigning his symptoms and in my opinion, with reasonable medical certainty, his disorders are real." Moreover, Dr. Gutnik stated that "Mr. Johnson has a questionable appreciation for his presents [sic] in time, place, and with regard to others. He still believes that it is somewhere between 1970 and August of 1972."

While Dr. Gutnik found that Johnson understood that he had been charged with a criminal offense, that a prosecutor would attempt to convict him, and that his attorney would serve to defend him, and found that Johnson would be able to give and

receive advice and to decide upon a plea and testify, Dr. Gutnik stated that Johnson would "do so all based on what others have told him to do and would not be able to make such decisions on his own." Dr. Gutnik stated, "I question his ability to confer coherently with appreciation of the proceedings." Dr. Gutnik's report, which was offered and received in evidence at the plea hearing, concludes by stating that

> Mr. Johnson's symptoms at this time have reached the level of psychosis, in which he has lost touch with reality. His paranoid thinking, and belief that he is still in the Army, make it difficult for me to understand how he can reasonably be expected to help defend himself against the charges that have been filed. Based on the above, in my opinion, with reasonable medical certainty, Mr. Johnson is not at this time competent to stand trial.

Johnson's trial attorney testified at the evidentiary hearing that he noticed that Johnson talked about himself as if he were two persons and seemed to have dissociative problems regarding time. However, despite Dr. Gutnik's report and his own observations, Johnson's attorney stated that he believed Johnson was competent to stand trial because it was his belief that Johnson had an understanding of the procedure and the nature of the procedure. His attorney testified that while Johnson did not want to raise the issue of competency, the attorney nonetheless told Johnson that he thought he had an obligation to call the court's attention to the issue of competency.

During the plea hearing, the court noted that Johnson's attorney had raised the issue of competency. The court then asked Johnson how old he was, what grade he had completed, whether he could read and write, whether he could understand what the judge was saying, and whether he was on drugs. Johnson answered appropriately. The court then found that Johnson had freely, voluntarily, knowingly, and intelligently withdrawn his former plea of not guilty. A factual recitation of the charges was made, and the court advised Johnson of his *Boykin* rights, which Johnson stated he understood. The following colloquy then occurred on the record between Johnson and his attorney:

[Attorney]: . . . We discussed also your competency to stand trial?

[Johnson]: Right.

[Attorney]: And you believe that you were competent to stand trial and competent to enter this plea today?

[Johnson]: That is correct.

The court then asked Johnson whether he committed the offense contained in the information. The following colloquy then occurred:

[Johnson]: I wasn't here — I don't know. I do believe that it happened, yes.

THE COURT: I'm sorry. I can't hear you.

[Johnson]: I do believe it happened.

THE COURT: Okay, and you believe you did it?

[Johnson]: Well, I think Darrell Johnson did it, yes.

THE COURT: And you're Darrell Johnson.

[Johnson]: I'm Darrell Johnson.

THE COURT: And you did it?

[Johnson]: Well, I wasn't here, you know, I can't say.

THE COURT: You don't have any independent recollection of it taking place; is that correct?

[Johnson]: That is correct.

. . . .

THE COURT: And even though you don't have an independent recollection of it taking place, you're willing to proceed with a guilty plea at this time based upon the information they have told you?

[Johnson]: Yes.

The court then found that Johnson had the capacity to understand the nature and the object of the proceedings against him, that he was able to "comprehend his own position in reference to the proceedings against him," and that he was able to make a rational defense and decision on how he should proceed. The court further found, beyond a reasonable doubt, that Johnson understood his rights and freely and voluntarily waived his rights and entered a plea.

On September 21, 1993, at Johnson's sentencing hearing, his attorney requested that Johnson receive a diagnostic evaluation prior to sentencing. Johnson's attorney noted in support of this

request that the presentence investigation report contained "even more evidence of the defendant's actual psychiatric or mental problems." Presumably, counsel was referring to such documents in the presentence investigation report as a letter from Sally Herrold, a certified alcohol and drug abuse counselor with Mid-East Nebraska Mental Health Clinic, Inc., who stated in a March 3, 1993, letter that Johnson, a client of the agency, had received a psychiatric assessment by Dr. Charles Graz, "who agreed with the diagnosis of Psychogenic Amnesia from Lincoln Regional Center. In addition, Dr. Graz suggested that Darrell may be experiencing post traumatic stress disorder."

As a result of the evaluation ordered by the court prior to sentencing, an evaluation report from the Department of Correctional Services was received by the court, which contained the following statements: "As one might guess, the conversation with Mr. Johnson seems somewhat disjointed and tangential at times with his explanations of questions being very lengthily involved and sometimes off the subject at hand. This interviewer would suggest that Mr. Johnson still is a confused and potentially dangerous person."

Another sentencing hearing was held on December 21, 1993. At that time, Johnson's attorney put Johnson on the stand and asked him whether he thought he had been competent to enter a plea. Johnson stated yes. Johnson then made a lengthy, obviously disjointed, and mostly nonsensical statement in which he talked about joining the Army and being hypnotized, being sent to Vietnam to look for POW's, and shooting two prisoners in order to help them. Johnson said he was brought out of hypnotism in 1992. Johnson's attorney asked Johnson whether he doubted the truth of his daughters' allegations, and Johnson stated,

> I have conversations in my head between them and their father. Their father he didn't know anything about it because it was a trauma for him.
>
> . . . .
>
> . . . The Darrell that they know is in my body and my heart and out of — not of my mind. Their father had no memory because they took it from him so he could have a life.

The court sentenced Johnson to 48 to 96 months' incarceration. Johnson did not file a direct appeal. Johnson filed a postconviction relief motion before the district court, which granted an evidentiary hearing. At the conclusion of that hearing, the district court denied Johnson postconviction relief. Johnson appeals.

## ASSIGNMENTS OF ERROR

Johnson alleges that the trial court erred when it did not determine that his trial counsel failed to inform him of available defenses and did not properly advise Johnson regarding his competency to stand trial.

## STANDARD OF REVIEW

■ One seeking postconviction relief has the burden of establishing the basis for such relief, and the findings of the postconviction court will not be disturbed unless they are clearly wrong. *State v. Rehbein*, 235 Neb. 536, 455 N.W.2d 821 (1990).

## ANALYSIS

*Insanity Defense.*

■ In a postconviction action seeking relief on the basis of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that such deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To determine the first prong of the *Strickland* test, the court must use the standard of whether the attorney, in representing the accused, performed at least as well as a lawyer with ordinary training and skill in the criminal law in the area. The second prong is satisfied if the defendant shows how he was prejudiced in the defense of his case as a result of his attorney's actions or inactions. *State v. Rehbein, supra.* In order to satisfy the prejudice prong, the defendant must show that there is a reasonable probability that but for his attorney's actions or inactions, the defendant would not have pled guilty, but would have insisted on going to trial. *Id.* If it is easier to analyze the matter from the standpoint of the "prejudice prong" rather than determining whether the attorney's actions were deficient, that

course should be followed. *State v. Schoonmaker*, 249 Neb. 330, 543 N.W.2d 194 (1996).

Johnson alleges that his trial counsel was ineffective in failing to pursue an insanity defense and in failing to explain to Johnson his options regarding an insanity defense. However, Johnson has not shown that such a defense would have been available. to him. Setting aside for the moment the issue of Johnson's potential incompetency to stand trial, Johnson has made no showing that at the time of the crime, he was insane, and that he is therefore entitled to an insanity defense. Johnson was institutionalized at the Lincoln Regional Center a little over a year after the crime was committed. However, the record only hints at why Johnson was committed. Dr. Gutnik's evaluation that Johnson was incompetent to stand trial did not take place until 2 years after the crime was committed. In any event, the defense of insanity has a different focus than whether a defendant is incompetent to stand trial. Under the *M'Naghten* rule, a defendant is sane if he has (1) the capacity to understand the nature of the act alleged to be criminal and (2) the ability to distinguish between right and wrong with respect to such act. *State v. Nielsen*, 243 Neb. 202, 498 N.W.2d 527 (1993). And, the showing regarding the mental state of the accused must relate to the time of the acts charged. *State v. Rowe*, 210 Neb. 419, 315 N.W.2d 250 (1982). Johnson has adduced no evidence whatsoever that he was insane at the time of the crime. Therefore, he cannot show that an insanity defense would have been available to him. As a result, he has failed to show how he was prejudiced by his attorney's alleged ineffectiveness in failing to discuss an insanity defense with him prior to entry of his plea. Therefore, this assignment of error fails.

*Competency to Stand Trial.*

Johnson alleges that his trial counsel was ineffective in failing to advise Johnson of the availability of the "defense" that he was not competent to stand trial. Neb. Rev. Stat. § 29-1823 (Reissue 1995) provides, in relevant part:

> If at any time prior to trial it appears that the accused has become mentally incompetent to stand trial, such disability may be called to the attention of the district court

by the county attorney, by the accused, or any person for the accused. The judge of the district court of the county wherein the accused is to be tried shall have the authority to determine whether or not the accused is competent to stand trial. The district judge may also cause such medical, psychiatric or psychological examination of the accused to be made as he deems warranted and hold such hearing as he deems necessary. Should he determine after a hearing that the accused is mentally incompetent to stand trial he shall order the accused to be committed to a state hospital for the mentally ill until such time as the disability may be removed.

■ Attorneys do have a duty, when a question of a client's competency arises, to ensure that the client is "capable of making a rational choice 'among rationally understood probabilities.' " *Galowski v. Berge*, 78 F.3d 1176, 1180 (7th Cir. 1996) (quoting *Stewart v. Peters*, 958 F.2d 1379 (7th Cir. 1992). However, the duty is fulfilled if the defendant's attorney has the defendant evaluated for competency and the results reveal that the defendant is competent to stand trial. *Galowski v. Berge, supra*; *Miles v. Dorsey*, 61 F.3d 1459 (10th Cir. 1995); *LaRette v. Delo*, 44 F.3d 681 (8th Cir. 1995).

■ If, however, the examination reveals that the defendant is incompetent, or that there is a question of competency, and the defendant's attorney does not bring the issue to the attention of the court, the defendant has not been afforded effective counsel. *Hull v. Freeman*, 932 F.2d 159 (3d Cir. 1991). In *Hull*, the defendant at a preliminary hearing was found incompetent to stand trial and was committed to a mental hospital. Four years later, Hull was subjected to another competency hearing, during which only the prosecution offered evidence of Hull's competency. Hull's attorney neither cross-examined the prosecution's psychiatrist nor presented witnesses on his client's behalf, notwithstanding the fact that Hull's attending psychiatrists at the mental hospital had recently found Hull to be incompetent to stand trial.

■ Hull's attorney testified at the postconviction relief hearing that he did not present evidence or cross-examine the prosecution's witness because he believed Hull to be competent

and Hull himself had expressed a desire to be found competent. The court found the attorney's representation to be ineffective.

First of all, few lawyers possess even a rudimentary understanding of psychiatry. They therefore are wholly unqualified to judge the competency of their clients. . . .

Trial counsel's second explanation, Hull's professed desire to be declared competent, also can be dismissed as illegitimate. . . .

. . . "Fundamental to our adversary system of justice, and perhaps especially of criminal justice, is the prohibition against subjecting to trial a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." [Citation omitted.] A presumptively incompetent defendant thus cannot be entrusted with the responsibility of dictating counsel's tactics at a competency hearing.

*Id.* at 168–69. See, also, *Bouchillon v. Collins*, 907 F.2d 589 (5th Cir. 1990) (counsel's decision not to investigate client competency held unreasonable because counsel knew defendant had mental problems and had been in mental institution, and defendant was diagnosed with posttraumatic stress disorder); *Wood v. Zahradnick*, 578 F.2d 980 (4th Cir. 1978) (counsel's failure to investigate incompetency unreasonable because defendant committed bizarre crime, told counsel he was using heroin and moonshine, and had no memory of act).

Johnson's trial counsel testified (1) that he felt Johnson was competent, (2) that Johnson himself felt he was competent, and (3) that Johnson did not wish to pursue the competency issue—none of which statements resolve Johnson's claim that his trial counsel did not effectively advise him concerning the matter of his competency to stand trial. If we were to hold that the explanation provided by Johnson's trial counsel answered the allegation, we would be embracing several flawed propositions: (1) that a lawyer is a better judge of competency than a psychiatrist engaged by the lawyer to examine the client's competency, (2) that an incompetent person is competent to waive his right to be free from criminal prosecution during his

incompetency, and (3) that an incompetent person's opinion that he or she is competent is conclusive evidence of competency.

The answer, however, to the claim of ineffective counsel is that unlike the attorney in *Hull*, Johnson's trial counsel *did* bring to the court's attention the issue of Johnson's incompetency. He did so by offering Dr. Gutnik's report into evidence for the court's consideration. Because he raised the issue in defiance of his client's wishes, we do not believe more had to be done in this case for the lawyer to be effective. The lawyer does not, in order to be effective, need to always actively *advocate* for a finding of incompetency. A finding of incompetency under § 29-1823 can result in the indefinite commitment of the client—perhaps a good thing for society, but not necessarily what the accused might want, particularly if probation or limited jail time appears possible upon sentencing. Admittedly, counsel may be forced to navigate a tactical tightrope when there is evidence of incompetency, but the client does not wish to pursue the matter. Here, counsel made the trial court aware of the question of Johnson's competency by placing Dr. Gutnik's report into evidence. Because Johnson's counsel placed the report in evidence, the power of the trial court under § 29-1823 to examine competency was triggered. The trial judge here made specific findings that Johnson possessed the attributes of competency, that he understood his rights, and that the plea was made "freely, voluntarily, knowingly and intelligently." It is the adequacy of the court's inquiry into the competency of Johnson which we believe must now be addressed, although as said, the record fails to demonstrate that counsel was ineffective.

*Due Process Rights Concerning Competency.*

 The fundamental and long–established principle which dominates this case is that the conviction of an accused person while he or she is legally incompetent violates the constitutional guarantee of substantive due process. *Pate v. Robinson*, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966). Moreover, the U.S. Supreme Court has held that a defendant does not waive the defense of his competency to stand trial by failing to demand a competency hearing. "[I]t is contradictory to argue

that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Id.* at 384. Nebraska statutes recognize this principle, providing that "[a] person who becomes mentally incompetent after the commission of a crime or misdemeanor shall not be tried for the offense during the continuance of the incompetency." Neb. Rev. Stat. § 29–1822 (Reissue 1995).

 "A defendant is competent to plead or stand trial if he has the present capacity to understand the nature and object of the proceedings against him, to comprehend his own condition in reference to such proceedings, and to make a rational defense." *State v. Osborn*, 241 Neb. 424, 426, 490 N.W.2d 160, 163 (1992). The test of mental capacity to plead is the same as that required to stand trial. *State v. Quarrels*, 211 Neb. 204, 318 N.W.2d 76 (1982).

 If facts are brought to the attention of the court which raise doubts as to the sanity of the defendant, the question of competency should be determined at that time. *State v. Bolton*, 210 Neb. 694, 316 N.W.2d 619 (1982). Section 29–1823 provides the district court with the authority to determine competency when such issue is raised, and the district court may "cause such medical, psychiatric or psychological examination of the accused to be made" as the court deems warranted to help aid in the determination of competency. Competency to stand trial is a factual determination, and the means to be employed to determine competency are discretionary with the district court. *State v. Bolton, supra.* If there is sufficient evidence in the record to support the finding of competency, it will not be disturbed on appeal. See *State v. Guatney*, 207 Neb. 501, 299 N.W.2d 538 (1980). In federal habeas litigation, the U.S. Court of Appeals for the Eighth Circuit has said that "we generally presume that a state court's factual finding of competency is correct." *Griffin v. Lockhart*, 935 F.2d 926, 930 (8th Cir. 1991). However, the court in *Griffin* was quick to point out that the presumption does not apply if the accused did not receive a full, fair, and adequate hearing or was otherwise denied due process.

 *Griffin*, consistent with the pronouncements of the U.S. Supreme Court, articulates two fundamental underlying

constitutional principles. The first is that a conviction of a mentally incompetent accused is a violation of substantive due process. *Id.* (citing *Drope v. Missouri,* 420 U.S. 162, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966)). The second is that due process requires that a hearing be held whenever there is evidence that raises a sufficient doubt about the mental competency of an accused to stand trial. *Drope v. Missouri, supra*; *Pate v. Robinson, supra.* The Eighth Circuit points out that "[t]he latter principle operates as a safeguard to ensure that the former principle is not violated." *Griffin v. Lockhart,* 935 F.2d at 929.

In *Griffin,* the court held that the trial court erred when it did not hold a hearing on the issue of competency. Under court order, Griffin had been examined by three doctors, who were unable to come to a consensus regarding Griffin's competency to stand trial. In light of the fact that they could not come to a consensus, the court found that there was sufficient doubt raised about Griffin's competency that the trial court should have held a competency hearing. The court noted that in the Eighth Circuit, "a medical opinion on the mental competency of an accused is usually persuasive evidence on the question of whether a sufficient doubt exists." *Id.* at 930. In addition, it rejected the prosecution's contention that because Griffin appeared rational and competent before and during his trial, a competency hearing did not need to be held.

> [Evidence of the defendant's appearance] is irrelevant, for once a doubt about the competency of an accused exists, later behavior " 'cannot be relied upon to dispense with a hearing.' " [Citations omitted.] . . . "While [a defendant's] demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue." . . .

*Id.* at 931 (quoting *Pate v. Robinson, supra*). Therefore, the court granted Griffin's habeas relief motion. The weakness in relying on the defendant's appearance during trial would seem to apply with equal force to the defendant's appearance during pretrial proceedings.

Although a separate competency hearing was not held in the instant case, and there was no announcement that a "competency hearing" was underway, the trial court apparently intended that the admission of the psychiatrist's report, the questioning of Johnson, the questioning of his counsel, and the court's observations of Johnson were in fact a competency hearing under § 29-1823, albeit done in the context of a hearing to enter a plea. Section 29-1823 does not specify a form of hearing, and the Supreme Court has said that the "means" of determining competency are discretionary with the trial court. *State v. Bolton*, 210 Neb. 694, 316 N.W.2d 619 (1982).

In the case at hand, we do not believe that the result wholly turns on the question of whether a hearing on competency was held, because it is apparent from the record of the plea hearing that competency was considered by the court at that time. Instead, the question we consider is whether the hearing held was sufficient, that is, whether it provided adequate procedural due process in order to protect Johnson's substantive due process right not to be tried for a crime while incompetent. See, *Lagway v. Dallman*, 806 F. Supp. 1322 (N.D. Ohio 1992); *Martin v. Dugger*, 686 F. Supp. 1523 (S.D. Fla. 1988).

*Lagway* is a federal habeas proceeding and addresses the adequacy of a competency determination made by the state trial court at a pretrial hearing to determine whether the defendant would be allowed to proceed pro se and allow his counsel to withdraw. Entered into evidence at the hearing was a report from a psychologist, who stated that while Lagway had an adequate understanding of courtroom procedures, at times could give relevant answers to questions, and seemed to have adequate insight into his behavior, he was not capable of rational thought and therefore was incompetent to stand trial. At the hearing, the trial judge questioned Lagway "at great length" regarding his competency to stand trial. 806 F. Supp. at 1326. The *Lagway* court noted that "[w]ithout referencing the expert's report, the trial judge reached his own conclusion on the competency issue" and ruled that Lagway was competent to stand trial and could proceed pro se. *Id.* In evidence before the trial court were Lagway's statements, many of which put into question whether Lagway had a grip on reality.

The *Lagway* court concluded that the lengthy colloquy with the trial judge regarding Lagway's competency amounted to a competency hearing. Therefore, the court determined the question was not whether Lagway was deprived of his right to have competency determined, but, rather, that "the fundamental question before the court is the *sufficiency* of the procedures followed in the competency hearing as those procedures are dictated by constitutional protections." *Id.* at 1333. Johnson's appeal presents us with the same issue.

The *Lagway* court noted that the report entered into evidence at the pretrial hearing was not challenged or contradicted by the prosecution or the court, as was true of Dr. Gutnik's report concerning Johnson.

> To the trial judge, apparently, the close of formal submission of evidence was not, however, the close of the truth–seeking process. He himself, an experienced, seasoned and perceptive jurist, engaged in a substantial investigation of his own—so substantial, in fact, that he seems to have ignored the report and made his ruling based upon his own impressions. There is no doubt that the trial judge's impressions raised as a result of his lengthy conversation with petitioner played a highly meaningful part in reaching his decision on the competency issue. Such impressions form a meaningful part in all such decisions. In law, they can not be the *only* basis for such decisions.

*Id.* at 1337.

The *Lagway* court noted that when the entire competency determination appears to turn not on an examination of an independent report, or even a studied rejection of it, but, rather, upon the trial judge's inquiries, problems arise, because the judge, acting as a diagnostician, is not subject to cross-examination, as an expert witness would be. "The trial judge here substituted his own psychological expertise for that of his court–appointed expert without any testimony concerning [the psychologist's] technical conclusions. The record is devoid of any explanation of how the judge evaluated the report and why he apparently dismissed it as valueless." *Id.* at 1338. The *Lagway* court noted that the trial judge had not made a

meaningful inquiry of Lagway's attorney regarding whether Lagway appeared to be capable of making rational decisions.

> [T]o rule on the issue without reference to the report and without hearing from counsel for defendant in some meaningful way precludes even minimal procedural protections. . . . [T]he trial judge foreclosed the essence of the fact–finding process, disregarded without voiced reason the [psychologist's] report, and depended upon his own opinions, gained from his conversations with petitioner, to reach the ultimate decision in question.

*Id.* at 1338. Given that the trial judge's method of conducting the competency hearing did not meet the standards for procedural due process, the court found that the finding of competency was "entitled to no presumption of correctness." *Id.* at 1339.

█ Procedural due process also requires notice. *Martin v. Dugger*, 686 F. Supp. 1523 (S.D. Fla. 1988). In *Martin*, the trial judge notified counsel that in 2 days, a hearing would be held regarding whether the defendant was competent to be executed, and that the judge had not yet decided whether the hearing would be an evidentiary one. At the hearing, the judge announced to counsel that he had, in fact, decided the hearing *would* be evidentiary. Martin's counsel protested, since he had had no prior notice, and therefore had not made arrangements for witnesses to appear at the hearing, some of whom lived out of the state. The trial judge received written reports and live testimony from a psychiatrist who testified on behalf of the state. Although the requirements of due process under these circumstances were said to be "less detailed than those required to determine the competency of a defendant to stand trial," the *Martin* court nonetheless found that minimal procedural due process requires that notice be given. *Id.* at 1561. The *Martin* court held that notice not only must be given to inform a party of the pendency of an action, but also must be sufficient to provide a person with a meaningful opportunity to be heard, and at the least, must inform a party regarding the nature of the upcoming proceeding.

In addition, the *Martin* court found that the trial court's rejection of the psychological reports on Martin's mental

competency, on the basis that he found them biased and not credible, without the live testimony from the psychiatrists, was "unjust and fundamentally unfair, and, therefore, was not in accord with due process." *Id.* at 1564. Because the trial judge made a determination of credibility of witnesses who did not appear before him, there was a clear violation, because "[n]o determination of credibility is possible 'when the witness comes before the trial fact finder by the reading of a cold transcript.'" *Id.* (quoting *California v. Green*, 399 U.S. 149, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970) (Brennan, J., dissenting)). Therefore, the *Martin* court determined that the trial court's determination of competency could not be given the presumption of correctness.

It would appear that a competency hearing of sorts was held in the case at hand; however, we believe that the hearing did not comport with fundamental procedural due process. The issue of competency was raised by defense counsel and heard that same day by the trial court, but with no advance notice to Johnson that such an issue would be heard. Given the contents of Dr. Gutnik's report, it appears that the trial court's determination of competency, as in *Lagway v. Dallman*, 806 F. Supp. 1322 (N.D. Ohio 1992), was made principally on the basis of the trial court's colloquy with the defendant. However, the colloquy goes only to Johnson's ability to understand the procedures, not his capability for rational decisionmaking, which is what Dr. Gutnik indicates is lacking. We do not believe that Johnson's assertion that he thought he was competent or his counsel's conclusory and unexplored opinion that his client was competent was sufficient evidence to negate the obvious import of Dr. Gutnik's report. First, an incompetent defendant cannot waive the problems presented by his or her incompetency. Second, when the trial court seeks the opinion of a defendant's counsel regarding his or her client's competency, counsel is placed in a difficult, if not untenable situation. If counsel privately has doubts about competency, but his or her client does not wish to contest competency, how does he or she respond to the court, and what argument should he or she offer on the issue? Counsel certainly cannot be a witness against his or her own client. See Canon 5, DR 5-102, of the Code of

Professional Responsibility. Moreover, although trial judges and lawyers by training and experience are often quite knowledgeable and perceptive about human nature, they nonetheless lack the specialized training and expertise of a psychiatrist. See *Hull v. Freeman*, 932 F.2d 159 (3d Cir. 1991). Without stating in the record why, the trial judge clearly rejected the uncontroverted report of Dr. Gutnik.

The colloquy between the accused and the court in this case may well form "a meaningful part in all such decisions [on competency]. In law, [it] can not be the *only* basis for such decisions." *Lagway v. Dallman*, 806 F. Supp. at 1337. For the reasons discussed, we do not believe that Johnson was afforded a full, fair, and adequate hearing on the issue of his competency. In addition, Johnson was not given notice that the plea hearing would turn into a competency hearing. In sum, we cannot give the trial judge's determination of Johnson's competency the presumption of correctness.

We are further troubled by the continuing and additional evidence before the court of Johnson's incompetency, even after the plea was entered. By the time Johnson reached sentencing, there was even more evidence to raise reasonable doubt about Johnson's incompetency. However, no further inquiry or hearing on competency was held. The statements of the accused at sentencing, as previously detailed herein, at least from the printed word in the bill of exceptions, are not a source of solace that Johnson was competent and solidly tethered to reality at the time he was sentenced, which also brings into question whether he was truly competent to enter a plea. The "trigger" for a competency hearing under Nebraska law has been set forth in *State v. Cortez*, 191 Neb. 800, 218 N.W.2d 217 (1974). The *Cortez* court held:

> If *at any time while criminal proceedings are pending* facts are brought to the attention of the court, either from its own observation or from suggestion of counsel, which raise a doubt as to the sanity of the defendant, the question should be settled before further steps are taken. However, although a hearing on the issue is sometimes said to be obligatory, if a reasonable doubt is raised, the doubt referred to is a doubt arising in the mind of the trial judge,

as distinguished from uncertainty in the mind of any other person. State v. Anderson, *supra;* State v. Boston, 187 Neb. 388, 191 N. W. 2d 452 (1971); State v. Crenshaw, 189 Neb. 780, 205 N. W. 2d 517 (1973).

(Emphasis supplied.) 191 Neb. at 802, 218 N.W.2d at 219.

Thus, we conclude that further doubt was raised at sentencing. At the time Johnson waived his *Boykin* rights, entered a guilty plea, and was found competent to stand trial by the court, the court had in hand only one piece of evidence of psychological or psychiatric expertise. That was Dr. Gutnik's report, offered by Johnson's counsel, which concluded that Johnson was not then competent to stand trial. At the plea hearing, Johnson's responses to the trial court's inquiry about his rights at times were seemingly appropriate; however, when asked about the crime, he asserted that he was not there and had no independent memory of it.

On September 21, 1993, the day when Johnson was originally scheduled to be sentenced, a request was made by his counsel in light of material in the presentence investigation report that the court order a 90-day diagnostic evaluation of Johnson at the Nebraska Correctional Center. In that request, defense counsel stated to the court that "the presentencing report contains even more evidence of the defendant's actual psychiatric or mental problems, which may indeed be creating the inability to recall the events surrounding the instance with which he is charged." The court ordered Johnson committed to the Department of Correctional Services for a 90-day evaluation prior to sentencing under Neb. Rev. Stat. § 29-2204(2)(a) (Supp. 1993).

The report generated as a result of this evaluation is before us as part of the presentence investigation report, and it was submitted by the Department of Correctional Services to the trial judge. We quote from that report:

> Mr. Johnson has numerous incidents and documentation of prior counseling and therapy intervention. . . . [H]e was diagnosed Axis I as post-traumatic stress disorder and also has had various diagnoses consisting of dissociative disorder, adjustment disorder with mixed emotional and also probable Psychogenetic Ammesic [sic]. . . .

In this interview, Mr. Johnson comes off as an individual who claims to have been two different people in the same body. He claims that he has been out of contact with society since 1972, when he experienced various traumas and such within the military system. He claims he is not the person who sexually assaulted his daughters . . . . Mr. Johnson believes that he is healthy at present time and should not be required to do prison or mental health time because the person who did those things is now no longer whom [sic] he is. . . . This interviewer would suggest that Mr. Johnson still is a confused and potentially dangerous person.

. . . .

Mr. Johnson would seem to be a person in obvious need of some extremely indepth and lengthy psychological help. . . .

. . . .

. . . [I]t is quite apparent to this interviewer that Mr. Johnson is a very confused and disturbed man at present time.

While not conclusive on the matter of Johnson's competency, this information is not encouraging for a finding of competency, and at the least should have raised further *doubt* in the trial judge's mind about Johnson's competency.

At the sentencing hearing on December 21, 1993, Johnson took the stand, and in response to his attorney's questions, stated that he felt he had been competent to stand trial and was not insane. He was asked if he desired to make a statement to the court and answered in the affirmative. Johnson then made a statement in which he related that he had been inducted into the Army in April 1969, that he went to basic training, that he was sent to the hospital to have his teeth checked and was hypnotized, that a house fell on top of him, and that "ever since then, there is nothing there outside of through my flashbacks . . . . I have to put myself in the dark so I can tell you the things that I do know." Johnson told the court that he was in a unit of nine men,

[t]here was six black, two Hispanics and myself, and we were designed for long-range reconnaissance. . . . All of

our training was done under hypnotism, and because of what we were asked to do. . . . . We were sent over as long–range reconnaissance groups in search and rescue for POWs. We came across camp, and there were two MIAs by their arms, and they — they wanted help, so I helped them. I gave them help. The only way to help them was to shoot them. They told us that if we had to do something like that — that we were only suppose[d] to say, "God will forgive you." But you'll never forgive yourself. It was that helping ease the pain — it's the only reflection I have with the flashbacks that I have now. Where if I remember something it hurts.

I know . . . that the Johnsons' [sic] are telling the truth. I've said it from the start. I did not doubt what they say happened.

It's a process the Army uses to bring us back so we can heal, because we usually just can't take it, and we end up killing ourselves in the service. Most of the men that are listed as MIAs now were brought home, but it was the ones that we had — we had — we had to relieve their misery. They never — they thought if they brought me back by hypnotism, then I would kill myself so they left me under.

Johnson's attorney then asked him if he understood that there was no evidence he was ever in Vietnam, and Johnson stated: "I know. . . . I understand that." According to the court reporter's description, Johnson was sobbing at this point. When asked about what his daughters were saying, Johnson said that he did not doubt the truth of what they were saying and explained:

A. . . . . I have conversations in my head between them and their father. Their father he didn't know anything about it because it was a trauma for him.

Q. Is that the other Darrell?

A. The Darrell that they know is in my body and my heart and out of — not of my mind. Their father had no memory because they took it from him so he could have a life.

The State cross–examined Johnson, and during this cross–examination, when asked if he had two daughters, he stated: "They are both of ours. . . . Darrell is the one that raised them. I was the one in the dark that could only hear them talk that's why I don't know them."

Having heard these bizarre statements (at least they are bizarre on the printed page when we read them), and having the diagnostic evaluation in hand from which we have quoted, plus Dr. Gutnik's report, we believe that there was "reasonable doubt" raised as to the competency of Johnson on December 21, 1993, when he was to be sentenced, sufficient to require the trial court to hold a competency hearing. We emphasize that we believe such doubt had also been previously raised at the time of the plea hearing by virtue of Dr. Gutnik's report, which triggered the need for a competency hearing. Although a hearing of sorts was held in the context of the plea hearing, that hearing was inadequate to comport with Johnson's procedural due process rights. The situation deteriorated, and was far worse at sentencing. By then, the trial court had before it evidence which compelled the conclusion that there was reasonable doubt about Johnson's competency sufficient to require another competency hearing in order to comport with due process, and one which was full, fair, and adequate. See *State v. Cortez*, 191 Neb. 800, 218 N.W.2d 217 (1974). If this threshold level of "doubt" is reached, "any time while criminal proceedings are pending," the matter must be settled before further steps are taken. *Id.* at 802, 218 N.W.2d at 219. The matter of Johnson's competency was never settled.

In *Silverstein v. Henderson*, 706 F.2d 361 (2d Cir. 1983), the court held that the defendant should be granted habeas corpus relief on the basis that the state trial court did not hold a hearing on competency when the issue of competency was put before it prior to Silverstein's entry of his plea. The court held that Silverstein should be granted relief despite the fact that the lack of a competency hearing was not the subject of Silverstein's direct appeal in the state courts. At trial, neither the court nor Silverstein's counsel had suggested that the conflict in psychiatric opinions be settled at a competency hearing.

Silverstein did not appeal the failure of the court to hold a competency hearing in his direct appeal.

Although the prosecution in *Silverstein* argued that Silverstein was procedurally barred from relief because he had failed to raise the issue of competency on a direct appeal, the federal court held that the "New York courts could not constitutionally apply a procedural default rule to a possibly incompetent defendant." *Id.* at 366. The *Silverstein* court held that under *Pate v. Robinson*, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966), a defendant cannot be deemed to have waived his rights if he is incompetent, and thus "when the trial court neglects its duty to conduct a hearing on competence, the defendant's failure to object or to take an appeal on the issue will not bar collateral attack." 706 F.2d at 367.

In conclusion, we find that although counsel was not ineffective in failing to advise Johnson about incompetency, and properly brought the matter to the trial court's attention, there is nonetheless plain error in these proceedings because of the trial court's failure to hold a full, fair, and adequate hearing on the issue of Johnson's competency when the court was faced with reasonable doubt regarding Johnson's competency at least twice: at the plea hearing and at sentencing. Plain error is when the trial court's ruling, action, or inaction is clearly untenable and unfairly deprives the defendant of a substantial right and a just result. See *State v. Philipps*, 242 Neb. 894, 496 N.W.2d 874 (1993). That prosecution is undertaken only of the mentally competent is obviously a substantial right and a hallmark of constitutional due process. See *Pate v. Robinson, supra*. Thus, it seems abundantly clear that it is plain error when the trial court fails to act to protect such a fundamental hallmark of due process. Although Johnson's appellate counsel does not address these actions of the trial court, we find it incumbent upon us to do so under the plain error doctrine.

We now turn to two decisions of the Nebraska Supreme Court which suggest a procedural default in postconviction proceedings when the issue of competency to stand trial was not raised on direct appeal. *State v. Painter*, 229 Neb. 278, 426 N.W.2d 513 (1988), was a postconviction proceeding in which

the defendant alleged he was incompetent at the time of the proceeding against him. The court said:

> In any event, we can dispose of any claimed errors as to the court's ruling on the first two issues in the petition by referring to our longstanding rule that a motion for postconviction relief may not be used to obtain review of issues which could have been raised on direct appeal. *State v. Rivers*, 226 Neb. 353, 411 N.W.2d 350 (1987). The questions of coerced confession and the defendant's competence could have been raised on direct appeal and cannot be the basis for postconviction relief.

229 Neb. at 280, 426 N.W.2d at 515. Despite this statement, the Supreme Court did not impose a procedural bar, but instead considered the merits of the trial counsel's decision not to have the defendant examined for competency, and rejected the claim.

In *State v. Rehbein*, 235 Neb. 536, 455 N.W.2d 821 (1990), the defendant in a postconviction proceeding asserted that he had not been competent to enter a plea of guilty. The court reviewed the evidence, including that concerning the defendant's psychiatric treatment and medication, and concluded that the defendant's plea was made knowingly, intelligently, and voluntarily while he was competent to do so. The court's next statement was the following:

> We also hasten to point out that a motion for postconviction relief may not be used to obtain review of issues which could have been raised on direct appeal. *State v. Painter*, 229 Neb. 278, 426 N.W.2d 513 (1988). See, also, *State v. El-Tabech*, 234 Neb. 831, 453 N.W.2d 91 (1990). The question of defendant's competence and whether his plea was coerced by the promises of his counsel could have been raised on direct appeal and cannot be the basis for postconviction relief. See, *State v. Painter, supra*; *State v. Threet*, 231 Neb. 809, 438 N.W.2d 746 (1989).

*State v. Rehbein*, 235 Neb. at 544–45, 455 N.W.2d at 827. We have already discussed *Painter*. *State v. Threet*, 231 Neb. 809, 438 N.W.2d 746 (1989), although a postconviction case, makes no mention whatsoever that the defendant was asserting either

incompetency to stand trial or ineffectiveness of counsel for failing to investigate or raise incompetency.

Additionally, we have examined numerous postconviction cases, and in the following cases, the subject of the defendant's competency to stand trial or enter a plea was raised or, in some instances, the claim was that counsel was ineffective in failing to raise this issue. However, in none of these cases was a procedural bar used to avoid consideration of issues in postconviction proceedings dealing with competency to stand trial or enter a plea. *State v. Lyman*, 241 Neb. 911, 492 N.W.2d 16 (1992); *State v. Marshall*, 233 Neb. 567, 446 N.W.2d 733 (1989); *State v. Tully*, 226 Neb. 651, 413 N.W.2d 910 (1987); *State v. Bradford*, 223 Neb. 908, 395 N.W.2d 495 (1986); *State v. Evans*, 218 Neb. 849, 359 N.W.2d 790 (1984); *State v. Moore*, 217 Neb. 609, 350 N.W.2d 14 (1984); *State v. Beans*, 212 Neb. 31, 321 N.W.2d 72 (1982); *Marteney v. State*, 210 Neb. 172, 313 N.W.2d 449 (1981); *State v. Campbell*, 192 Neb. 629, 223 N.W.2d 662 (1974); *State v. Leadinghorse*, 192 Neb. 485, 222 N.W.2d 573 (1974); *State v. Cortez*, 191 Neb. 800, 218 N.W.2d 217 (1974); *State v. Blackwell*, 191 Neb. 155, 214 N.W.2d 264 (1974); *State v. Crenshaw*, 189 Neb. 780, 205 N.W.2d 517 (1973); *State v. Virgilito*, 187 Neb. 328, 190 N.W.2d 781 (1971). Moreover, despite the language quoted from *Painter* and *Rehbein*, the court there considered the issues relating to competency and did not impose any procedural bar.

The only case even approaching the actual use of a procedural bar for competency issues as suggested in *Painter* and *Rehbein* is *State v. Fincher*, 191 Neb. 446, 216 N.W.2d 172 (1974), which was a second postconviction proceeding. The court found that competency was not raised in the first postconviction proceeding and thus could not be raised in a second postconviction proceeding, absent a showing that the relief sought was not available at the time of the first proceeding. *Fincher* is obviously distinct from the procedural background of this case, and in any event, the continued viability of the rule used to deny relief in *Fincher* has to be very much in doubt at this point. See *State v. Williams*, 247 Neb. 931, 531 N.W.2d 222 (1995) (second degree murder conviction

overturned on second postconviction proceeding where jury instructions did not include malice in the elements of second degree murder). For these reasons, despite the suggestions in *Painter* and *Rehbein*, we do not believe the law is that there is a procedural bar in postconviction proceedings of issues relating to competency to stand trial, and we decline to impose such a procedural bar for these issues in this postconviction proceeding. In reaching this conclusion, we bear in mind the sanctity of constitutional protections and the need to guard against constitutionally infirm convictions.

In *State v. Ryan*, 249 Neb. 218, 229–30, 543 N.W.2d 128, 138 (1996), the court held:

> An appellate court is compelled to accept jurisdiction when the sentence entered by the trial court is invalid due to plain error in the proceedings. *State v. Williams*, 247 Neb. 931, 531 N.W.2d 222 (1995). Moreover, the defendant's conviction was constitutionally infirm and, therefore, void ab initio. See, *State v. Rolling*, 218 Neb. 51, 352 N.W.2d 175 (1984); *State v. Ewert*, 194 Neb. 203, 230 N.W.2d 609 (1975). A void sentence is no sentence. *State v. Wren*, 234 Neb. 291, 450 N.W.2d 684 (1990). It has been longstanding law in Nebraska that a void judgment may be attacked at any time in any proceeding. See *State v. Ewert, supra*. Thus, to use a procedural default or waiver as a means of ignoring a plain error that results in an unconstitutional incarceration would place form over substance; would damage the integrity, reputation, and fairness of the judicial process; and would render the plain error doctrine and postconviction relief remedies meaningless. *State v. Plant, supra*.

We hold that the trial court's failure to hold a full, fair, and adequate hearing, affording Johnson procedural due process rights at the competency and plea hearing, coupled with the failure to conduct a sua sponte competency hearing at the time of sentencing, was a denial of due process. Thus, the trial court committed plain error when it dismissed the petition for postconviction relief.

*Remedy.*

Having reached the conclusion that Johnson was deprived of his constitutional guarantee of due process, we believe the Nebraska Postconviction Act, specifically Neb. Rev. Stat. § 29-3001 (Reissue 1995), dictates the remedy:

> If the court finds that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Constitution of this state or the Constitution of the United States, the court shall vacate and set aside the judgment and shall discharge the prisoner or resentence him or grant a new trial as may appear appropriate.

Included within the grant of a new trial, of necessity, will be the question, at the time of those proceedings, whether Johnson is now competent to stand trial, assuming that some 3 years later there remains reasonable doubt about his competency. Therefore, we reverse the conviction and remand the cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.