IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. BOHY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
TRAVIS L. BOHY, APPELLANT.

Filed May 7, 2013.    No. A-12-386.

Appeal from the District Court for Knox County: JAMES G. KUBE, Judge. Affirmed.

Travis L. Bohy, pro se, and on brief, Mark A. Johnson, of Johnson, Morland, Easland & Lohrberg, P.C., for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

INBODY, Chief Judge, and SIEVERS and RIEDMANN, Judges.

RIEDMANN, Judge.

INTRODUCTION

Travis L. Bohy appeals from the order of the district court for Knox County convicting him of first degree sexual assault, burglary, and use of a weapon to commit a felony. Pursuant to Neb. Ct. R. App. P. § 2-111(E)(5)(a), the case is submitted without oral argument because Bohy pleaded guilty. On appeal, Bohy argues the district court erred in failing to conduct a competency hearing to determine whether his pleas and reaffirmation of his pleas were made freely and voluntarily and in failing to correctly advise him of his parole and release eligibility dates. He also claims his trial counsel was ineffective for failing to request a competency hearing and failing to object to the improper truth in sentencing. We conclude that the district court had no reason to doubt Bohy's competency at the time it accepted his pleas and reaffirmation and that erroneous truth in sentencing does not require reversal. We also find that his trial counsel was not ineffective for failing to request a competency hearing, because a psychiatric evaluation concluded that Bohy was competent to stand trial, and that his trial counsel was not ineffective

- 1 -

for failing to object to the sentence pronouncement, because Bohy was not prejudiced by the lack of objection. Accordingly, we affirm.

BACKGROUND

On August 29, 2011, Bohy was charged with count I, first degree sexual assault; count II, burglary; count III, terroristic threats; and count IV, use of a weapon to commit a felony. The charges arose from an incident where Bohy broke into the home where his ex-girlfriend was staying, sexually assaulted her, and threatened her with a knife and gun. He initially pleaded not guilty to the charges. At a hearing on October 25, Bohy's counsel informed the court that Bohy had been taken to the hospital for emergency protective custody on October 19 and was returned to jail on October 24. Counsel asked the court to appoint Dr. Y. Scott Moore, a forensic psychiatrist, to examine Bohy for competency to stand trial and for a possible defense of not responsible by reason of insanity.

Dr. Moore reviewed the police reports and medical reports surrounding Bohy's case before meeting with Bohy on November 17, 2011. In a letter to the court dated November 23, 2011, which was included in the presentence report, Dr. Moore stated:

> As a result of this evaluation, it's my opinion that . . . Bohy does now have the capacity to understand the nature and the objects of the proceedings against him, he does now have the capacity to comprehend his own condition in reference to those proceedings, and he does now have the capacity to make a rational defense against those proceedings with the help of his attorney. I would offer an opinion to the Court that . . . Bohy is competent for trial at this time.
>
> As to the issue of insanity, it is my opinion that . . . Bohy does not have any form of psychotic sort of presence at the time I evaluated him, and I am not able to discover any reason to think that he was out of touch with reality at the time of the incident for which he's being charged. That, in my opinion, rules out the issue of insanity. Certainly he did understand what he was doing and had no problem understanding the difference between right and wrong in respect to what he was doing. I would offer an opinion to the Court that . . . Bohy would not fulfill the criteria for insanity in the State of Nebraska.

On December 20, 2011, pursuant to a plea agreement, Bohy pleaded guilty to counts I, II, and IV, and the State dismissed count III. After advising Bohy of his rights and questioning whether he understood everything, the court found that his pleas were made intelligently, voluntarily, and knowingly; that he understood his statutory and constitutional rights; and that he had freely and voluntarily waived those rights.

At sentencing on March 27, 2012, Bohy's counsel told the court that on December 20, 2011, when Bohy entered his pleas, he had been on medication for depression and that he was "overmedicated." Bohy's counsel stated that after Bohy had entered his pleas, Bohy contacted counsel and said that he did not feel that he had been ready, but Bohy's counsel stated that counsel had "used [his] best persuasive powers and maybe overused them to get [Bohy] to take the plea agreement." Counsel stated that, despite this, after having discussed everything, Bohy wanted to reaffirm his plea agreement.

The court then asked Bohy whether he agreed with what his counsel had said, and Bohy replied, "Yes, Your Honor." The court asked whether he was considering withdrawing his plea

agreement, and he said he was not. Bohy confirmed that he still wanted to go forward with the plea agreement and confirmed that he had had a sufficient amount of time to discuss the matter with his attorney. The court then asked Bohy whether he felt like his medication had been adjusted to the point where he understood not only what happened previously, but what was happening on that day. Bohy responded, "Definitely, Your Honor." Bohy then reaffirmed that he was pleading guilty to counts I, II, and IV.

The court found that Bohy had freely and voluntarily reaffirmed his pleas of guilty to the three charges and that it could proceed to sentencing on that basis. Bohy was sentenced to 10 to 15 years' imprisonment on count I and 3 to 5 years' imprisonment on count II, to be served concurrently. He was sentenced to 10 to 15 years' imprisonment on count IV, to run consecutively with his other sentences. He was given credit for 230 days served. The court then stated, "Assuming that you lose none of the good time that you accumulate then, you must serve at least 10 years before becoming eligible for [parole], you must serve at least 15 years before your mandatory release." Bohy now appeals.

ASSIGNMENTS OF ERROR

Bohy alleges, renumbered, that the district court erred (1) by failing to conduct a competency hearing to determine if he was competent to enter guilty pleas on December 20, 2011, and reaffirm the guilty pleas on March 27, 2012; (2) by accepting his reaffirmation of his guilty pleas on March 27; and (3) by failing to properly advise him of his parole eligibility date and release eligibility date. He also claims that he received ineffective assistance of counsel.

ANALYSIS

*Competency Hearing.*

Bohy alleges that the district court erred in failing to hold a competency hearing to determine whether he was competent to enter and reaffirm his guilty pleas. He argues that the district court was under a duty to conduct a competency hearing, particularly in light of Bohy's counsel's informing the court that Bohy had been "overmedicated" when entering his plea on December 20, 2011. We disagree.

A court is not required to make a competency determination in every case in which a defendant seeks to plead guilty or waive his or her right to counsel. *State v. Vo*, 279 Neb. 964, 783 N.W.2d 416 (2010). A competency determination is necessary only when a court has reason to doubt the defendant's competence. *Id.*

In *State v. Johnson*, 4 Neb. App. 776, 551 N.W.2d 742 (1996), we found that the trial court had been presented with sufficient evidence to create doubt about Darrell Johnson's competence. Johnson had been evaluated by a psychiatrist prior to entry of his plea, and the psychiatrist had authored a report concluding that Johnson was not competent. At the time of the plea, the trial court did conduct a hearing of sorts on Johnson's competency to enter his plea, by receiving psychiatric reports, questioning Johnson and his counsel, and making observations of Johnson. Johnson's answers to questions at the time of the plea indicated that while he acknowledged that "'Darrell Johnson'" had committed the offense and that he was, in fact, "'Darrell Johnson,'" he also represented to the court that he was not present when "'Darrell Johnson'" committed the offense and that he had no independent recollection of the offense. *Id.*

at 780, 551 N.W.2d at 747. In addition, at the subsequent sentencing hearing, Johnson presented what we characterized as "a lengthy, obviously disjointed, and mostly nonsensical statement." *Id.* at 781, 551 N.W.2d at 748. We concluded that the results of the uncontroverted psychiatric report, as well as Johnson's own responses to court questions, were sufficient to raise doubts as to his competency.

Similarly, in *State v. Griffin*, 20 Neb. App. 348, 823 N.W.2d 471 (2012), at the time of James Griffin's sentencing, his counsel raised concerns about Griffin's competency and requested an evaluation, but the court denied the request. Counsel indicated concerns about information in the presentence report and personal observations that caused counsel "'to believe [Griffin] proceed[ed] in and out of reality.'" *Id.* at 359, 823 N.W.2d at 479. Counsel indicated that Griffin had never been evaluated for mental illness and indicated that it was counsel's position that Griffin did suffer from mental illness. Counsel indicated that Griffin's comments "'are often not grounded in reality.'" *Id.* at 360, 823 N.W.2d at 480. Griffin also provided a statement in his own behalf which could be characterized as disjointed and nonsensical. We held that this evidence was sufficient to raise a doubt about Griffin's competence.

The present case is distinguishable from *Johnson* and *Griffin* because there was no evidence of this sort presented to the district court on December 20, 2011, or March 27, 2012. While Bohy's counsel informed the court that Bohy had been "overmedicated" on December 20, counsel's concern was more focused on whether Bohy had entered into the plea agreement on too short of notice or with too much influence from counsel, rather than concern as to whether Bohy had been competent at the time. In addition, Bohy had undergone a mental evaluation, and Dr. Moore's letter to the court indicated that although Bohy had been taking mood stabilizing, antidepressant, and antipsychotic medications, he was competent.

Furthermore, Bohy's own actions did nothing to raise questions about his competence. Bohy listened to the court's questions on December 20, 2011, and March 27, 2012, and responded appropriately. He indicated on March 27 that he "definitely" felt that his medication had been properly adjusted and that he understood what had happened and what was happening at that time. Bohy also addressed the court on March 27, apologized to the victim and her family, and stated that he was going to try to better himself while serving his sentences. His allocution was coherent and rational. There was nothing about any of these exchanges that would have given the court reason to doubt Bohy's competence on December 20, 2011, or March 27, 2012. Therefore, the court did not err in failing to hold a competency hearing.

*Reaffirmation of Pleas.*

Bohy argues that the district court erred on March 27, 2012, by accepting his reaffirmation of his guilty pleas. He claims that the "plain import" of his counsel's advisement to the court that he had been "overmedicated" when he entered his pleas was to alert the court to the fact that his pleas were not intelligently and voluntarily made on December 20, 2011. Brief for appellant at 25.

We disagree for the same reason we rejected Bohy's first assignment of error. The fact that trial counsel stated that Bohy had been "overmedicated" alone is insufficient to cause the court to doubt Bohy's competence. This is particularly true in light of Dr. Moore's report opining that Bohy was competent and Bohy's responses in court, which were appropriate to the questions

asked. After discussion with Bohy's counsel and questioning Bohy, the district court found, on March 27, 2012, that Bohy had freely and voluntarily reaffirmed his pleas of guilty to the three charges and that it could proceed to sentencing on that basis. This assignment is without merit.

*Truth in Sentencing.*

Bohy argues the district court erred in failing to properly advise him of his parole eligibility date and release eligibility date under Nebraska's "truth in sentencing" laws.

Subject to an exception not applicable here, in imposing an indeterminate sentence upon an offender, a court is required by Neb. Rev. Stat. § 29-2204 (Reissue 2008) to "[f]ix the minimum and maximum limits of the sentence," to "[a]dvise the offender on the record the time the offender will serve on his or her minimum term before attaining parole eligibility assuming that no good time for which the offender will be eligible is lost," and to "[a]dvise the offender on the record the time the offender will serve on his or her maximum term before attaining mandatory release assuming that no good time for which the offender will be eligible is lost."

Parole eligibility is governed by Neb. Rev. Stat. § 83-1,110 (Reissue 2008), which provides in relevant part "(1) Every committed offender shall be eligible for parole when the offender has served one-half the minimum term of his or her sentence as provided in [§] 83-1,107 . . . . No such reduction of sentence shall be applied to any sentence imposing a mandatory minimum term." Pursuant to Neb. Rev. Stat. § 83-1,107(2)(a) and (3) (Cum. Supp. 2012), the term of a committed offender is reduced "by six months for each year of the offender's term and pro rata for any part thereof which is less than a year," but "reductions of terms . . . may be forfeited, withheld, and restored" by correctional facility officials.

Section 83-1,110 makes clear that these good time reductions do not apply to mandatory minimum sentences. A defendant must serve the mandatory minimum portion of a sentence before earning good time credit toward the maximum portion of the sentence. *State v. Castillas*, 285 Neb. 174, 826 N.W.2d 255 (2013). Thus, the parole eligibility date is determined by subtracting the mandatory minimum sentence from the court's minimum sentence, halving the difference, and adding that difference to the mandatory minimum. *Id*. Similarly, the mandatory discharge date is computed by subtracting the mandatory minimum sentence from the maximum sentence, halving the difference, and adding that difference to the mandatory minimum. *Id*.

The statutory sentencing requirements for Bohy's charges are as follows:

• Count I: first degree sexual assault, a Class II felony, punishable by imprisonment for a minimum of 1 year and a maximum of 50 years. Neb. Rev. Stat. § 28-105(1) (Reissue 2008).

• Count II: burglary, a Class III felony, punishable by imprisonment for a minimum of 1 year and a maximum of 20 years. § 28-105(1).

• Count IV: use of a weapon to commit a felony, a Class IC felony, punishable by imprisonment for a mandatory minimum of 5 years and a maximum of 50 years. § 28-105(1).

Bohy was sentenced to prison for 10 to 15 years for count I and 3 to 5 years for count II, to be served concurrently. Neither sentence carries a mandatory minimum, so Bohy would be eligible for parole in 5 years and mandatory release in 7½ years on counts I and II. On count IV, Bohy was sentenced to prison for a consecutive term of 10 to 15 years, with a mandatory minimum of 5 years. Subtracting the mandatory minimum sentence, 5 years, from the court's minimum sentence, 10 years, leaves 5 years for which Bohy could receive good time credit.

Bohy must serve half of those 5 years, or 2½ years, plus the mandatory minimum of 5 years before becoming eligible for parole. Accordingly, under the court's sentence for count IV, Bohy would be eligible for parole in 7½ years, assuming no loss of good time.

Similarly, subtracting the mandatory minimum sentence, 5 years, from the maximum sentence, 15 years, leaves 10 years for which Bohy could receive good time credit. Bohy must serve half of those 10 years, or 5 years, plus the mandatory minimum of 5 years before becoming eligible for mandatory release. Accordingly, under the court's sentence for count IV, Bohy would reach his mandatory discharge date in 10 years, assuming no loss of good time. In total, Bohy would be eligible for parole in 12½ years and mandatory release in 17½ years. However, the court told Bohy that he would be eligible for parole in 10 years and subject to mandatory discharge in 15 years, assuming no loss of good time.

If there is a conflict between the court's sentence and its truth in sentencing advisement, the statements of the minimum and maximum limits control. According to § 29-2204:

> If any discrepancy exists between the statement of the minimum limit of the sentence and the statement of parole eligibility or between the statement of the maximum limit of the sentence and the statement of mandatory release, the statements of the minimum limit and the maximum limit shall control the calculation of the offender's term.

Therefore, Bohy's actual aggregate prison sentence is computed based on the court's statement of the minimum and maximum limits of 10 to 15 years and a consecutive term of 10 to 15 years. As computed above, Bohy will be eligible for parole in 12½ years and subject to mandatory discharge in 17½ years, assuming no loss of good time.

Bohy argues that because the court incorrectly pronounced his truth in sentencing, he is entitled to a remand for purposes of such pronouncement. Bohy was sentenced to two consecutive prison terms of 10 to 15 years, with a mandatory minimum of 5 years. That total sentence was not unclear and was not misleading. The meaning of a sentence is, as a matter of law, determined by the contents of the sentence itself. *State v. Glover*, 3 Neb. App. 932, 535 N.W.2d 724 (1995). The trial judge's incorrect statement regarding time for parole eligibility was not part of the sentences and does not evidence ambiguity in the sentences imposed. Bohy has failed to demonstrate any prejudice resulting from this error. To establish reversible error, a defendant must demonstrate that the trial court's action prejudiced or otherwise adversely affected a substantial right of the defendant. *Id*. There can be no suggestion that the misstatement in any way led to Bohy's plea agreement which, by necessity, preceded the misstatement. Moreover, nothing in the record indicates the trial judge would have sentenced him differently had he not miscalculated the good time and parole eligibility date. Upon our review of the record, we conclude that Bohy has suffered no prejudice. This assignment of error is meritless.

*Ineffective Assistance of Counsel.*

Bohy alleges he received ineffective assistance of counsel on two bases. To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Young*, 279 Neb. 602, 780 N.W.2d 28 (2010). Although Nebraska law requires that issues of ineffective assistance of counsel be raised on direct appeal or be waived, the fact that they are

raised does not necessarily mean they can be resolved. *Id*. In most instances, they cannot, because the trial record reviewed on appeal is devoted to issues of guilt or innocence and usually will not disclose the facts necessary to decide either prong of the analysis. *Id*. The determining factor is whether the record is sufficient to adequately review the question. *Id*.

Bohy claims his trial counsel was ineffective for failing to request a competency hearing on or prior to sentencing. We have previously recognized that attorneys do have a duty, when a question of a client's competency arises, to ensure that the client is capable of making a rational choice among rationally understood probabilities. *State v. Johnson*, 4 Neb. App. 776, 551 N.W.2d 742 (1996). However, the duty is fulfilled if the defendant's attorney has the defendant evaluated for competency and the results reveal that the defendant is competent to stand trial. *Id*.

Bohy's trial counsel asked the court to appoint Dr. Moore to determine Bohy's competency. Dr. Moore found that Bohy was competent to stand trial and ruled out the issue of insanity. Dr. Moore's evaluation took into account Bohy's diagnoses and the medications he was taking. There is nothing in the record to establish that trial counsel had any additional reason to believe that Bohy was incompetent. We therefore find that trial counsel fulfilled its duty and was not ineffective for failing to request a competency hearing.

Bohy also asserts that his trial counsel was ineffective for failing to object to the incorrect truth in sentencing pronouncement. As stated above, the law provides that the statement of the minimum limit of a sentence controls when a discrepancy exists between the minimum limit and the statement of parole eligibility. Because Bohy is not entitled to resentencing or new sentences based on the court's erroneous pronouncement, he cannot show that his counsel's failure to object actually prejudiced his defense. Accordingly, trial counsel was not ineffective on this basis.

## CONCLUSION

We conclude that the district court did not err in failing to hold a competency hearing because there was no evidence presented to create a doubt about Bohy's competence. Similarly, the district court did not err in accepting Bohy's reaffirmation of his pleas because there was no evidence suggesting he was incompetent at that time. We find that Bohy is not entitled to remand on the basis of an incorrect truth in sentencing pronouncement because the minimum limit of the sentences pronounced controls to calculate his parole eligibility and release eligibility dates. Finally, we find that Bohy's trial counsel was not ineffective for failing to request a competency hearing or failing to object to the incorrect truth in sentencing.

AFFIRMED.