IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. JANOUSEK

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JONATHAN L. JANOUSEK, APPELLANT.

Filed August 7, 2018.    Nos. A-17-875, A-17-876.

Appeals from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Affirmed in part, and in part vacated and remanded with directions.

Donald L. Schense, of Law Office of Donald L. Schense, for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Jonathan L. Janousek appeals from his plea-based convictions and sentences in the district court for Sarpy County for attempted possession of a stolen firearm and attempted possession of a firearm by a prohibited person in case No. A-17-875 (the firearm case), and burglary in case No. A-17-876 (the burglary case). He contends that he was denied effective assistance of counsel, that the court erred by not ordering a competency hearing, and that his sentences were excessive. Upon our review, we find the record inadequate on direct appeal to address one of Janousek's assertions regarding ineffective assistance of counsel; his other assertions of ineffective assistance of counsel are without merit. With respect to the alleged trial court error, we find no violation of Janousek's due process rights. Additionally, we find that Janousek's sentences for his convictions for attempted possession of a firearm by a prohibited person and for burglary were not excessive.

- 1 -

However, we find that the court made a sentencing error when sentencing Janousek on his conviction for attempted possession of a stolen firearm. Accordingly, we remand for resentencing as to that conviction only.

## II. BACKGROUND

On July 12, 2016, the State filed an information in the firearm case, charging Janousek with possession of a stolen firearm in violation of Neb. Rev. Stat. § 28-1212.03 (Reissue 2016), a Class IIA felony, and possession of a firearm by a prohibited person in violation of Neb. Rev. Stat. § 28-1206 (Reissue 2016), a Class ID felony. The State filed an information in the burglary case on August 9, charging Janousek with burglary in violation of Neb. Rev. Stat. § 28-507 (Reissue 2016), a Class IIA felony.

On March 14, 2017, a plea hearing was held in the district court. The State asked the court for leave to amend by interlineation the first count in the firearm case to attempted possession of a stolen firearm, a Class IIIA felony, and to amend the second count to attempted possession of a firearm by a prohibited person, a Class II felony. The State informed the court that in return for the amendments, Janousek had agreed to plead to the charges in both the firearm case and the burglary case. The State also asked that the sentences in the firearm case run concurrent to each other. The parties also stipulated that Janousek was a convicted felon, making him a prohibited person for purposes of the second count in the firearm case, and that the State would offer his prior convictions at the time of sentencing. After Janousek affirmed that he would be pleading guilty pursuant to the plea agreement, the court granted leave to amend the information in the firearm case by interlineation.

After Janousek waived 24-hour notice and reading of the amended information, the district court informed him that the court had to ask him certain questions before accepting his pleas. The court then asked several preliminary questions, to which Janousek responded appropriately, before asking him whether he suffered from any mental illness or mental or emotional defect. Janousek responded affirmatively and told the court that he suffered from posttraumatic stress disorder (PTSD) and "some bipolar"; that he had been treated by and was currently under the care of a physician for those conditions; that a physician had prescribed him medications, including Wellbutrin, Cymbalta, BuSpar, Neurontin, and "another one for nightmares"; that he was currently taking the prescribed medication; that with the aid of that medication, he was able to think clearly and coherently; and that he understood the proceedings that were occurring that day.

Janousek's attorney noted for the court an incident at the jail approximately 2 weeks earlier, which "they classified as a suicide attempt" by Janousek. Janousek was taken to the hospital and then "transferred to a cell by himself." Janousek's attorney further informed the court that she and Janousek had discussed the incident and that Janousek had been seeing a mental health professional while in jail to address that issue. The attorney also informed the court that Janousek had entered pleas in Douglas County to two felonies, that Douglas County had already ordered a presentence investigation (PSI) in that case, and that she wanted the court to order a psychological evaluation as part of the PSI in this case.

The district court then stated:

> Okay. And, Mr. Janousek, the reason the Court asks those questions or brings those ideas or those topics up is I have to make sure that you understand what you're doing today.
>
> And it's clear to the Court that you're in a better condition than you were now [sic], and you're answering the questions appropriately and everything else like that, but some of the --
>
> Although you are competent to enter a plea, one of the things that your attorney is requesting is that insofar as sentencing is considered, that further testing be done, not so far as your competency but to aid and assist the Court in determining the ultimate punishment. Do you understand this?

Janousek responded affirmatively, and he indicated that, other than his prescribed medications, he had not taken any other drugs or alcohol, legal or otherwise, in the previous 72 hours.

After Janousek again informed the district court that he was pleading guilty to the amended charges in the firearm case and the charge in the burglary case, the court explained and Janousek indicated his understanding of his constitutional rights, the consequences of pleading guilty, the nature of the charges, and the possible penalties. Janousek also affirmed his understanding of the plea agreement; that he would plead guilty to the amended firearms charges and to the burglary charge. Janousek himself then advised the court that part of the plea agreement was that the sentences "run concurrent" on the firearms case. The court informed Janousek that it was not bound by any recommendations or agreements regarding sentencing, which Janousek indicated he understood.

The State then provided a detailed factual basis for the charges to which Janousek was pleading in both cases, which we summarize below.

The factual basis provided for the firearm case showed that on June 2, 2016, after law enforcement officers encountered Janousek near his vehicle outside of a motel room in Sarpy County, a county records search revealed that he was a convicted felon with an active warrant for absconding from his parole. Janousek, who initially gave officers a false name, was "read his rights" and agreed to speak with police. During an inventory search of Janousek's vehicle, police discovered a pistol grip and a loaded shotgun; the shotgun was later found to have been stolen from an individual in Lincoln, Nebraska. Officers also located a pistol in the motel room outside of which Janousek's vehicle was parked. Officers had initially gone to the motel after receiving information that a room there "contained a large amount of items believed to be related to illegal activity." Janousek's six previous convictions, all in 2003 for which he served more than 1 year in jail, were recited as part of the factual basis for the firearm case.

The factual basis provided for the burglary case shows that on May 26, 2016, police officers responded to a residential address after receiving a burglary report. The victim told officers that unknown suspects had broken into her house while she was sleeping and had stolen her purse, tools, and vehicle. Officers determined that the suspects entered the residence by breaking out a garage window. Officers later determined that the victim's credit cards were being used in the Omaha area. On May 27, officers found a phone belonging to Janousek in a different stolen vehicle. On June 2, officers made contact with Janousek at a motel as noted above. Janousek told

the officers that two other individuals, one of which was staying at another motel, might have stolen merchandise belonging to the burglary victim at the other motel. At the other motel, officers located "information and documents belonging to [the burglary victim] including checks, credit cards and an address book." On June 13, officers received back from the crime lab a piece of glass taken from the victim's garage that contained a latent fingerprint. The fingerprint on the glass was positively identified as Janousek's.

After the State provided the factual bases for Janousek's pleas, the district court made several inquiries of Janousek and his attorney. In response, Janousek's attorney indicated that she did not have anything to add to the factual bases and that she had had full access to the files of the county attorney's office. She also expressed her belief that the plea bargain was in Janousek's best interests. Janousek agreed that the State could present evidence that would support convictions for the crimes to which he had pled guilty. Janousek also affirmed that he was satisfied with the work his attorney had performed in the case and indicated that he did not have any questions for the court.

The district court then found beyond a reasonable doubt that Janousek understood the nature of the charges and possible sentences; that his plea was made freely, knowingly, intelligently, and voluntarily; that the plea was "accurate"; and that there was a "basis in fact" for Janousek's plea. The court accepted Janousek's plea and found him guilty of the charges in the amended information in the firearm case as well as of the charge in the burglary case. The court ordered a PSI, to be "coordinate[d] between Douglas and Sarpy County," and specifically requested "the special addition of a psychological evaluation" for Janousek pursuant to his attorney's request. The court set a sentencing hearing for May 22, 2017, although the sentencing hearing did not actually take place until July 17.

The psychological evaluation was conducted on June 12, 2017, by clinical psychologist, Gary Gard. In his report, Gard states that the evaluation was "requested to determine [Janousek's] intellectual ability and emotional adjustment in order to provide information for his sentencing hearing." Gard placed Janousek's "general cognitive ability" in the "*Average* range of intellectual functioning." Gard noted:

> Mr. Janousek has recently succumbed to a psychotic episode noted by regressive behavior, physical impassivity, and the shutting down of emotional expression and behavioral initiative. He reports delusions and hallucinations, and his thinking and behavior at times are bizarre and incoherence [sic]. In addition, he has a serious impairment of his reality testing abilities, and he misperceives events and forms mistaken impressions of people and what their actions signify. Consequently, he frequently fails to anticipate the consequences of his actions and to misconstrue the boundaries of appropriate behavior. His inaccurate perceptions of people and events lead him to erroneous conclusions and ill-advised actions, and his poor judgment undermines the adequacy of his adjustment. His confusion in separating reality from fantasy and the inappropriate behaviors to which it leads constitute a chronic and pervasive source of adjustment difficulties in his life. The extent to which he distorts reality is likely to prevent him from maintaining adequate adjustment for any length of time in most situations.

Later in the report, Gard stated:

> Mr. Janousek has been in a moderately intense hypomanic period. Internal affective pressures of a troubling and depressive nature keep welling up and compelling him to desperate efforts to turn matters around. Abruptly changing moods ensue. Short spells of tight control that are followed by expressions of hopelessness and then by brief periods of boundless energy and hyperactivity characterize his behavior as he tries to convince both himself and others that all will be well.
>
> Mr. Janousek has abused drugs, which probably were maintained as instruments to help relieve the persistent tension and social inadequacies that he experiences interpersonally. The drugs also may embolden him; although more probable is their function in generating feelings and fantasies that supplant the alienation of his daily reality.

Gard concluded that Janousek "appears to have significant mental health problems," with diagnoses including "Bipolar I Disorder with Psychotic Features," "Posttraumatic Stress Disorder," "Dependent Personality Disorder," "Schizotypal Personality Disorder," and "Stimulant Use Disorder In Sustained Remission In a Controlled Environment, Mild . . . should be ruled out." Gard recommended the implementation of "supportive psychotherapeutic measure[s] and targeted psychopharmacologic medications" and indicated that once Janousek's "more pressing or acute difficulties are adequately stabilized, attention should be directed toward goals that would aid in preventing a recurrence of problems."

At the sentencing hearing on July 17, 2017, Janousek was represented by a different attorney from the same office as the attorney who represented him at the plea hearing. Janousek's attorney told the district court that she had had a chance to see the PSI, did not have any additions or corrections to it, and had no reason why sentencing could not occur that day. She also noted for the court that Janousek had been sentenced the week prior on two counts for crimes committed in Douglas County to consecutive terms of "20 to 40 years." Janousek's attorney then stated:

> If you review the PSI and the psych[ological] evaluation, you'll note . . . that my client suffers from . . . bipolar, PTSD, anxiety, delusional, has schizophrenia, has a depressive disorder, and suffers from multiple psychosis that really cause him to behave irrationally.
>
> This stems from . . . what my client suffered at the age of 17, kidnapped, assaulted, severely assaulted, and suffered severe trauma, which we think resulted in the severe mental disorders.
>
> . . . .
>
> I do think that the psych[ological] eval[uation] is really very telling, and the fact that he never physically harmed any of his victims, which does not diminish what he has done, how bad he feels for what he has done, but . . . I do think it's important to note that he never did physically harm any of his victims.
>
> At this point in time, Your Honor, my client has suffered multiple issues of attempting suicide in the past.
>
> He understands his sentence that he's received from Douglas County. He's going to serve a minimum of 20 years before he's eligible for parole.

He would ask at this point in time this Court would consider that in his sentencing, and we would ask that any sentence . . . that the Court would make it concurrent with the extreme sentence that he has received in Douglas County.

Later in the hearing, Janousek's attorney noted that Janousek had "pled for help" with his mental health issues prior to the commission of the crimes at issue but had been unable to receive it.

When the district court gave Janousek the opportunity to speak, his attorney informed the court that Janousek was uneasy speaking in front of the court and had written out what he wanted the court to know. Janousek's attorney offered and the court received Janousek's written statement for inclusion in the PSI. Janousek then added:

Your Honor, I wanted to add . . . I'm not sure I can read off that very coherently right now because I'm still shook up from Douglas. I didn't quite understand what was going on there. I do want to say I'm sorry to the people that were [a]ffected by my actions in Sarpy County. And I don't remember all those days like society does. Sometimes I don't -- not even in the same world as this world. And now I have hope because I'm working, and we have a starting point with diagnosis, and we're going through medications and stuff.

After hearing comments from the State, the district court noted that it had reviewed the entire PSI, including the psychological evaluation and the victim impact statement from the burglary victim. The court noted Janousek's mental health issues, the seriousness of his present crimes, and his lengthy prior criminal history. The court found that imprisonment was necessary for the protection of the public because of the substantial risk that Janousek would engage in additional criminal conduct if placed on probation and because a lesser sentence would depreciate the seriousness of the offense or promote disrespect for the law. In the firearm case, the court sentenced Janousek to imprisonment for "3 years" for attempted possession of a stolen firearm and to a concurrent sentence of 10 to 15 years' imprisonment for attempted possession of a firearm by a prohibited person. The court gave Janousek credit for 410 days' time served in the firearm case. In the burglary case, in an apparent misstatement, the court sentenced Janousek to imprisonment "for a period of not less than 20 years, nor more than 15 years" with the sentence to run consecutively to the sentence in the firearm case. The court gave Janousek 390 days of credit in the burglary case. The court also stated that Janousek's sentence "ends up being 20 years to 30 years," apparently referring to the combined total of the concurrent and consecutive sentences in both cases. Finally, the court ordered that the sentences in these two cases run consecutively to "any other sentence" Janousek was "currently serving."

On July 17, 2017, the district court subsequently entered orders memorializing Janousek's sentences. In the written order entered in the burglary case, the court sentenced Janousek to imprisonment for a period of 10 to 15 years. Janousek subsequently perfected his appeals to this court.

## III. ASSIGNMENTS OF ERROR

Janousek asserts that (1) he received ineffective assistance of counsel in that his defense counsel failed to request a competency evaluation of him, (2) the district court erred in failing to order a competency hearing to determine his competency to enter his pleas in violation of his due process rights, and (3) the court abused its discretion by ordering him to serve an excessive sentence.

## IV. STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

The question of competency to stand trial is one of fact to be determined by the court, and the means employed in resolving the question are discretionary with the court. *State v. Fox*, 282 Neb. 957, 806 N.W.2d 883 (2011). The trial court's determination of competency will not be disturbed unless there is insufficient evidence to support the finding. *Id.*

Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Thieszen*, 300 Neb. 112, 912 N.W.2d 696 (2018). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## V. ANALYSIS

### 1. INEFFECTIVE ASSISTANCE OF COUNSEL

Janousek asserts that he received ineffective assistance of counsel in that his trial counsel failed to request a competency evaluation of him. He is represented on direct appeal by different counsel than trial counsel. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Vanness, supra*. Otherwise, the issue will be procedurally barred. *Id.*

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). An

ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018).

When an ineffective assistance of counsel claim is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Casares, supra*. General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review. *Id.* An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018). The prejudice requirement in a plea context is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Haynes*, 299 Neb. 249, 908 N.W.2d 40 (2018). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *State v. Cotton, supra*. The two prongs of the ineffective assistance of counsel test under *Strickland v. Washington, supra*, may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018).

When reviewing a claim of ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics, and an appellate court will not second-guess reasonable strategic decisions by counsel. *State v. Nolt, supra*. When considering whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *Id.*

Janousek argues that his trial counsel was ineffective for failing to (1) request a competency evaluation, (2) have him evaluated to determine whether he was competent to change his plea to guilty and subsequently to be sentenced, and (3) adequately discuss with him "the need for a competency review" in light of the psychological evaluation report included in the PSI. Brief for appellant at 11. The record is sufficient to address Janousek's first two claims of ineffective assistance of counsel on direct appeal. However, Janousek's third claim involves discussions between Janousek and trial counsel, as well as counsel's strategic decision making about how to handle the sentencing hearing. Since these conversations are not part of the record, the record is insufficient to address this third claim on direct appeal.

A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense. *State v. Haynes, supra*. The test of mental capacity to plead is the same as that required to stand trial. *Id.* In order to demonstrate

prejudice from counsel's failure to investigate competency and for failing to seek a competency hearing, the defendant must demonstrate that there is a reasonable probability that he or she was, in fact, incompetent and that the trial court would have found him or her incompetent had a competency hearing been conducted. *State v. Hessler*, 295 Neb. 70, 886 N.W.2d 280 (2016).

Here, Janousek's responses to questions from the district court during the plea colloquy were appropriate and reflected his knowledge that he was appearing in court for the purpose of entering guilty pleas and that he understood the consequences of such action as they were explained to him by the judge. Janousek informed the court that he suffered from "PTSD and some bipolar," that he was being treated by a physician and taking prescribed medication for those conditions, and that he was able to think clearly with the aid of those medications. He also informed the court that, other than his prescribed medications, he was not under the influence of any other drugs or alcohol. Janousek's attorney informed the court that she had met with her client, that Janousek had made a suicide attempt while in jail about 2 weeks prior to the plea hearing, that he had gone to the hospital before being transferred back to jail, and that he had been seeing a mental health professional while in jail. She asked the court to order a psychological evaluation in connection with the PSI. The court informed Janousek that it "asks those questions or brings those ideas or topics up" in order to "make sure that you understand what you're doing today." The court observed that Janousek was clearly in a better condition than he had been previously and that he was answering questions appropriately. The court then concluded that Janousek was competent to enter a plea before proceeding with the balance of the plea hearing.

At the time of sentencing, Janousek's attorney noted Janousek's mental health diagnoses as reflected in the PSI, as well as his history of suicide attempts and past trauma.

We note that reference was made to the Douglas County criminal proceedings at both the plea and sentencing hearing in this case. This court recently disposed of Janousek's appeals in the Douglas County cases. See *State v. Janousek* (Nos. A-17-785, A-17-786, Mar. 19, 2018) (disposed of without opinion). Our records show that in the Douglas County cases Janousek pled guilty to two charges of robbery which occurred in May 2016. The plea hearing in those cases was held in March 2017, at which time Janousek informed the court that he had been kidnapped and sexually assaulted when he was younger, suffers from related PTSD for which he is on medication, but that it did not affect his ability to understand the proceedings. In accepting Janousek's pleas, the court found that he understood his constitutional rights. Sentencing in the Douglas County cases took place on July 13, at which time Janousek was sentenced to consecutive terms of 20 to 30 years' imprisonment. Janousek's attorney told the court that she had some concerns about Janousek's capacity to be sentenced, but she thought that he was oriented to time and place that day. After privately conferring with Janousek further, his counsel informed the court that Janousek was prepared to go forward based on his responses to her in their conversation and that she was not concerned about his mental health at that time. The court engaged Janousek in a dialogue, and he informed the court about the medications he was taking and that he felt ready to proceed that day. Janousek's only assigned error in his appeal of the Douglas County cases was that the sentences he received were excessive. We affirmed the sentences.

In the present case, Janousek's attorneys brought the issue of Janousek's mental health to the attention of the district court both at the time of the plea hearing and at sentencing. His attorney

asked for a psychological evaluation for purposes of sentencing, which was completed and included in the PSI. The psychological evaluation revealed Janousek's mental health diagnoses, but it did not indicate that Janousek was not competent to understand the legal proceedings at issue. The record shows that Janousek was being treated for his mental health issues at the time of the plea and sentencing hearings.

In sum, the record does not demonstrate that Janousek's trial counsel was ineffective for failing to seek an evaluation or hearing to challenge his competence to enter a plea or be sentenced.

### 2. COURT'S FAILURE TO ORDER COMPETENCY HEARING

Janousek also asserts that the district court erred in failing to order a competency hearing to determine his competency to enter pleas in violation of his due process rights. He argues that there was sufficient reasonable doubt both at the plea hearing and at the sentencing hearing to raise a question about his competency.

A court is not required to make a competency determination in every case in which a defendant seeks to plead guilty or to waive his or her right to counsel; a competency determination is necessary only when a court has reason to doubt the defendant's competence. *State v. Hessler*, 295 Neb. 70, 886 N.W.2d 280 (2016). If facts are brought to the attention of the court which raise doubts as to the sanity of the defendant, the question of competency should be determined at that time. *State v. Johnson*, 4 Neb. App. 776, 551 N.W.2d 742 (1996). Due process requires that a hearing be held whenever there is evidence that raises a sufficient doubt about the mental competency of an accused to stand trial. *State v. Griffin*, 20 Neb. App. 348, 823 N.W.2d 471 (2012). A medical opinion on the mental competency of an accused is usually persuasive evidence on the question of whether a sufficient doubt exists. *State v. Johnson, supra*.

There was no basis for the district court to question Janousek's competency when Janousek entered his guilty pleas. During the plea hearing, Janousek represented to the court that he was receiving medical care and prescribed medication for "PTSD and some bipolar." He indicated that this medication allowed him to think clearly and coherently, and that he was not under the influence of alcohol or any drugs other than those he had been prescribed. His attorney confirmed that Janousek had been seeing a mental health professional while in jail. Finally, throughout the plea hearing, Janousek's responses to questions from the court were coherent and distinct. There was nothing to indicate to the court that Janousek was not competent to enter his pleas and the court's finding that he was competent is supported by the record. Accordingly, Janousek's claim that the court violated his due process rights by failing to order a competency hearing at that time is without merit.

At the time of sentencing, the district court was presented with additional information about Janousek's mental health in the PSI, which included Gard's psychological evaluation of him. Gard noted a recent "psychotic episode" and Janousek's "thinking and behavior" that were "at times bizarre." While Gard recommended both "psychotherapeutic" and "psychopharmacologic" intervention, he did not address what effect the medication Janousek was already taking had on his present mental health status and did not address his competency to enter a plea or be sentenced in general. Janousek did speak briefly at the sentencing hearing, and while he made the somewhat odd statement, "Sometimes I don't -- not even in the same world as this world," his comments to

the court were generally understandable. There is nothing in the record to suggest that Janousek was not lucid at the time of sentencing or that he was unaware of what was happening and its seriousness. Janousek indicated that he was still "shook up" over the sentences he received in the Douglas County cases, which sentencing occurred 4 days prior. Janousek apologized to those affected by his actions in Sarpy County, and expressed hope based on having a starting point to treat his mental health in terms of both diagnosis and medication. Janousek's lengthy written statements included in the PSI were coherent and comprehensive. There is nothing in the record raising a reasonable doubt that Janousek's mental capacity and comprehension at the time of sentencing were any different than they were at the time of his pleas and nothing to suggest that he had discontinued taking his prescribed medications at the time of the sentencing hearing. Janousek's argument that the court violated his due process rights by failing to order a competency hearing at the time of sentencing is also without merit.

### 3. SENTENCING

In connection with sentencing in these cases, we first address an issue of plain error in connection with Janousek's conviction for attempted possession of a stolen firearm in the firearm case. Then, we address the court's oral mispronouncement of sentence in the burglary case. Finally, we address Janousek's assigned error with respect to sentencing in both cases.

### (a) Plain Error in Sentencing

In the firearm case, Janousek was convicted of attempted possession of a stolen firearm and attempted possession of a firearm by a prohibited person. The court committed plain error in the sentence imposed for attempted possession of a stolen firearm.

Attempted possession of a stolen firearm is a Class IIIA felony punishable by a maximum sentence of 3 years' imprisonment and 18 months' postrelease supervision, a $10,000 fine, or both, with no minimum sentence. § 28-1212.03; Neb. Rev. Stat. § 28-105 (Supp. 2017). Because Janousek was sentenced to a concurrent term of imprisonment for attempted possession of a firearm by a prohibited person (a Class II felony) in the firearm case and to a consecutive term of imprisonment for burglary (a Class IIA felony) in the burglary case, the court was not required to impose a period of postrelease supervision for the conviction for attempted possession of a stolen firearm. § 28-105(6). However, the court was required to impose an indeterminate sentence pursuant to Neb. Rev. Stat. § 29-2204.02(4) (Reissue 2016), which provides:

> For any sentence of imprisonment for a Class . . . IIIA . . . felony for an offense committed on or after August 30, 2015, imposed consecutively or concurrently with a sentence of imprisonment for a Class . . . II, or IIA felony, the court shall impose an indeterminate sentence within the applicable range in section 28-105 that does not include a period of post-release supervision . . . .

For Janousek's conviction for attempted possession of a stolen firearm, the district court imposed "a sentence of 3 years." While this sentence was within the statutory range, it was not an indeterminate sentence as required by § 29-2204.02. The court plainly erred by failing to pronounce an indeterminate sentence. A determinate sentence is imposed when the defendant is

- 11 -

sentenced to a single term of years. *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018). When imposing an indeterminate sentence, a sentencing court ordinarily articulates either a minimum term and maximum term or a range of time for which a defendant is to be incarcerated. *Id.* In Nebraska, the fact that the minimum term and maximum term of a sentence are the same does not affect the sentence's status as an indeterminate sentence. *Id.*

Pursuant to § 29-2204.02(4)(b), the district court should have sentenced Janousek to an indeterminate sentence for his conviction for attempted possession of a stolen firearm. Because the court instead sentenced him to a determinate sentence on this charge, we find that sentence to be plain error. Accordingly, we must vacate this portion of Janousek's sentence in the firearm case and remand for resentencing. See *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017) (finding plain error and remanding for resentencing where court's sentence did not comply with § 29-2204.02(4)).

(b) Oral Mispronouncement in Burglary Case

We next address the ambiguity in the court's oral pronouncement of sentence and inconsistency between that pronouncement and the written sentencing order in the burglary case. Orally, the court imposed a sentence of "not less than 20 years, nor more than 15 years" to be served consecutively to the sentence in the firearm case. Such a sentence is impossible. However, the court also stated at the sentencing hearing that Janousek's sentence "ends up being 20 years to 30 years." This second statement makes sense as a combined sentence total for the two cases (concurrent sentences of 3 years and 10 to 15 years in the firearm case) if the court actually intended to impose a sentence of 10 to 15 years in the burglary case. And, the court did impose a sentence of 10 to 15 years in its written sentencing order.

Normally, when a sentence orally pronounced at the sentencing hearing differs from a later written sentence, the former prevails. *State v. Olbricht*, 294 Neb. 974, 885 N.W.2d 699 (2016). However, when there is an ambiguity in the oral sentencing, as opposed to a conflict between the oral pronouncement and the written judgment, it is proper to look to the written judgment to ascertain the trial court's intention. *State v. Sorenson*, 2 Neb. App. 998, 520 N.W.2d 28 (1994), affirmed as modified, 247 Neb. 567, 529 N.W.2d 42 (1995).

In *Sorensen*, we listed the following four circumstances when an ambiguity may exist:
> (1) when the words used have more than one meaning;
> (2) when otherwise unambiguous words are used in an unusual way;
> (3) the extent of the sentence cannot be ascertained from the language used; or
> (4) the plain meaning of the words used lead to an irrational or absurd result.

2 Neb. App. at 1003, 520 N.W.2d at 31, (citing *U.S. v. Villano*, 816 F.2d 1448 (10th Cir. 1987)). On further review by the Nebraska Supreme Court, our decision was affirmed as modified on other grounds in *State v. Sorenson*, 247 Neb. 567, 529 N.W.2d 42 (1995). The ambiguity identified by this court in *Sorensen* was whether the sentences imposed were to run consecutively or concurrently. However, the Supreme Court did not consider the case as one involving the resolution of an ambiguity since the sentences involved were required by statute to be served consecutively. The Supreme Court, instead, determined that the oral pronouncement was invalid

to the extent that it did not impose consecutive sentences. But the Supreme Court concluded, as did this court, that the trial court's written notation correctly set forth the sentences, and the Supreme Court did not find it necessary to set aside the sentence or remand the case for resentencing. The Supreme Court did not disapprove of our analytical framework, and thus we apply it in the present case.

In this case, the plain meaning of the words used in the district court's initial pronouncement of sentence in the burglary case lead to an irrational or absurd result, making it ambiguous, although the initial pronouncement was clarified somewhat by the court's pronouncement of the cumulative total of the sentences imposed in both the burglary case and the firearm case. While we do not view this second statement by the court as a correction of an inadvertent mispronouncement of a valid sentence, we do note that such a correction may be made in limited circumstances. See *State v. Clark*, 278 Neb. 557, 772 N.W.2d 559 (2009) (circumstances under which judge may correct inadvertent mispronouncement of sentence are limited to those instances in which it is clear that defendant has not yet left courtroom; it is obvious that judge, in correcting his or her language, did not change in any manner sentence originally intended; and no written notation of inadvertently mispronounced sentence was made in records of court). In this particular case, the court's intention was further clarified when it memorialized a sentence of imprisonment for "not less than 10 years nor more than 15 years" in its written order in the burglary case. Since the written order makes the initial oral pronouncement clear, the sentence imposed by the court in the burglary case need not be set aside or remanded for resentencing.

(c) Excessive Sentencing

Finally, we address Janousek's assertions that the district court imposed excessive sentences for his convictions of attempted possession of a firearm by a prohibited person and burglary.

Attempted possession of a firearm by a prohibited person is a Class II felony punishable by 1 to 50 years' imprisonment; the court imposed a sentence of 10 to 15 years. § 28-1206; Neb. Rev. Stat. § 28-201 (Supp. 2017); § 28-105. Burglary is a Class IIA felony punishable by up to 20 years' imprisonment; the court imposed a sentence of 10 to 15 years. § 28-507; § 28-105. The sentences imposed by the court for both of these convictions were within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018). When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The sentencing court is not limited to any mathematically applied set of factors. *State v. Phillips*, 297 Neb. 469, 900 N.W.2d 522 (2017). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor

and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Thieszen*, 300 Neb. 112, 912 N.W.2d 696 (2018).

Janousek argues that the district court did not adequately consider his mental health issues in imposing sentence; however, a review of the record and PSI shows that the court considered the relevant sentencing factors and did not abuse its discretion. Janousek, a high school graduate, was 36 years old at the time of the PSI. He has had various employments, and has certification as an emergency medical technician, but he was fired from his most recent job for stealing money from his employer. Janousek is single and has no dependents. According to the psychological evaluation, Janousek has "significant mental health problems" with diagnoses including "Bipolar I Disorder with Psychotic Features" and "Posttraumatic Stress Disorder." He also has a "Dependent Personality Disorder" and a "Schizotypal Personality Disorder." Finally, the evaluator reported that a "Stimulant Use Disorder In Sustained Remission In a Controlled Environment, Mild . . . should be ruled out." Janousek reported both to the clinical psychologist who conducted the evaluation and to the probation officer conducting the PSI that he was kidnapped, robbed, and raped at age 17. He also admitted to drug abuse. Janousek has a lengthy criminal history, both adult and juvenile, including many previous convictions for robbery. As noted by the probation officer, "[o]ne salient feature of [Janousek's] criminal history is his proclivity toward robberies." After committing multiple robberies in 2002, Janousek was incarcerated until being placed on parole in April 2015. He violated his parole by stealing from his employer in November 2015, absconded from parole supervision in May 2016, and his parole has subsequently been revoked. After absconding from parole supervision, Janousek embarked on his most recent crime spree, which included robberies in Lancaster and Douglas Counties as well as the crimes in Sarpy County at issue in the present appeal. On the Level of Service/Case Management Inventory, he scored in the very high risk to reoffend category. A review of the record from the sentencing hearing shows that the court considered the relevant factors, including Janousek's mental health issues. The court did not abuse its discretion in considering the relevant factors and did not impose excessive sentences. Accordingly, we affirm Janousek's sentences following his convictions for attempted possession of a firearm by a prohibited person and burglary.

## VI. CONCLUSION

As discussed above, the record on direct appeal is insufficient to address one of Janousek's claims of ineffective assistance of trial counsel; his other claims of ineffective assistance of trial counsel are without merit. We find no violation of Janousek's due process rights. We affirm Janousek's sentences for his convictions for attempted possession of a firearm by a prohibited person and burglary. However, we find that the district court committed plain error in sentencing Janousek for his conviction for attempted possession of a stolen firearm. As such, we vacate that sentence and remand the cause for resentencing under the applicable statutory requirements.

AFFIRMED IN PART, AND IN PART VACATED
AND REMANDED WITH DIRECTIONS.