IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. SANDERS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CHANCE SANDERS, APPELLANT.

Filed September 2, 2025.    No. A-24-928.

Appeal from the District Court for Buffalo County: JOHN H. MARSH, Judge. Affirmed.

Jerad A. Murphy, of Bruner Frank, for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

PIRTLE, BISHOP, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Chance Sanders appeals from his plea-based convictions of attempted first degree murder and attempted use of a deadly weapon to commit a felony and the sentences imposed thereon. He contends that (1) the sentences imposed were excessive, (2) the district court abused its discretion by allowing a plea to be entered without reviewing his competency evaluation and making a finding of Sanders' competency, and (3) his trial counsel was ineffective in (a) failing to adequately review discovery materials and discuss the potential defense of not guilty by reason of insanity and (b) allowing him to enter a plea when Sanders' competency was in question and failing to have an evidentiary hearing on the issue. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

On April 30, 2024, Sanders was charged in Buffalo County District Court with attempted first degree murder and use of a deadly weapon (knife) to commit a felony, both Class II felonies.

- 1 -

On May 15, defense counsel filed a motion to determine if Sanders was mentally competent to stand trial. This request was granted by the court on May 20. The presentence investigation report (PSR) reflects that forensic psychiatrist Dr. Klaus Hartman met with Sanders on May 24 and that Dr. Hartman determined Sanders had the capacity to stand trial. From the limited record presented to this court, we are unable to determine whether a separate hearing was held for the court to make an explicit competency finding.

On July 30, 2024, pursuant to a plea agreement, Sanders pled guilty to attempted first degree murder, a Class II felony, and attempted use of a deadly weapon (knife) to commit a felony, a Class IIA felony. As part of the plea agreement, the State also agreed to recommend that the sentences run concurrently. The plea hearing is not part of the record before this court, so we have looked to the PSR for a factual basis in this case. The PSR set forth that, on March 30, 2024, Kearney police officers responded to Sara O'Dell's report that Sanders, who was her former boyfriend, was stabbing her current boyfriend, Douglas Vollmer, with a knife. While O'Dell was speaking with a 911 operator, Sanders momentarily retreated from Vollmer, but when Sanders realized that O'Dell was on the phone he stated, "If I'm going to prison, I might as well finish it," and attacked Vollmer again. Vollmer was stabbed numerous times sustaining wounds to his chest, left shoulder, left abdomen, and right forearm as well as numerous lacerations to his torso. Vollmer had defensive wounds to his hands and a laceration on his back and left arm, a contusion to the top of his forehead, and abrasions to both knees. He also suffered two fractured ribs.

Although the plea hearing is not included in the record before this court, the district court's journal entry related to the plea hearing states:

> Upon inquiry by the Court, [Sanders] acknowledged [his] understanding of rights, charges, proceedings and penalties, and further acknowledged [his] understanding that the entry of a plea of guilty or no contest waives all rights to trial.
>
> . . . .
>
> The Court finds that an adequate factual basis was established for the plea. After further inquiry [Sanders] acknowledged that [his] plea was not the result of any promise or threat. The Court found that [Sanders'] plea was entered knowingly, voluntarily and intelligently and that [Sanders] knowingly, voluntarily and intelligently waived[his] constitutional rights as hereinabove explained. Plea negotiations explained by Counsel. The Court found that [Sanders' plea] was accepted and conviction[s] [are] entered pursuant thereto.

The Court further ordered a full presentence investigation that, "at the discretion of a probation officer, shall include: **Psych Evaluation**." (Emphasis in original.) Dr. Hartman, who had previously completed the competency evaluation of Sanders in May 2024, completed a follow-up interview with Sanders on October 9. After the follow-up, Dr. Hartman provided a letter to the court stating that Sanders had not been diagnosed with a personality disorder at that time, there were no other diagnosable psychiatric conditions that would make him likely to reoffend, and suggesting that a relapse prevention plan be developed to identify early warning signs and high-risk situations as well as strengthening healthy coping skills.

At the sentencing hearing on November 22, 2024, the court stated that it had reviewed the presentence investigation report (PSR), which included Dr. Hartman's letter. During the hearing,

- 2 -

the State requested that the 911 recording and 12 photographs be added to the PSR. The court stated:

> . . . One of the anomalies of the Nebraska code, the Penal Code, is that attempted second degree murder and attempted first degree murder are both the same penalty, they're both Class II felonies; but the facts, the length that this attack went on is quite consistent with premeditation, and I think I have to take that into account at sentencing. But I'm also going to consider . . . Sanders' lack of . . . prior criminal history, and the matter is . . . just unexplainable.

The court sentenced Sanders to 30 to 50 years' imprisonment for attempted first degree murder and 10 to 20 years' imprisonment for attempted use of a deadly weapon (knife) to commit a felony. The sentences were ordered to be served concurrently, and Sanders was awarded credit for 238 days previously served. Sanders, acting pro se, timely filed a notice of appeal to this court and a request for a bill of exceptions, requesting only the sentencing hearing held on November 22, 2024, but not the hearing governing his plea. Based upon Sanders' request, his trial counsel was allowed to withdraw, and the district court appointed Sanders different appellate counsel.

## III. ASSIGNMENTS OF ERROR

Sanders contends that (1) the sentences imposed were excessive, (2) the district court abused its discretion by allowing a plea to be entered without reviewing his competency evaluation and making a finding of Sanders' competency, and (3) his trial counsel was ineffective in (a) failing to adequately review discovery materials and discuss a potential plea of not guilty by reason of insanity and (b) allowing him to enter a plea when Sanders' competency was in question and failing to have an evidentiary hearing on the issue.

## IV. STANDARD OF REVIEW

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023).

The question of competency to stand trial is one of facts to be determined by the court, and the means employed in resolving the question are discretionary with the court. *State v. Haas*, 317 Neb. 919, 12 N.W.3d 787 (2024). The trial court's determination of competency will not be disturbed unless there is insufficient evidence to support the finding. *Id*.

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Rezac*, 318 Neb. 352, 15 N.W.3d 705 (2025). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

## V. ANALYSIS

### 1. EXCESSIVE SENTENCES

Sanders' first assigned error is that the sentences imposed are excessive. Specifically, Sanders argues that the court erred in failing to properly weigh mitigating factors including his age, his lack of criminal history, his background, and his mental health issues.

Sanders was convicted of attempted first degree murder, a Class II felony, and attempted use of a deadly weapon (knife) to commit a felony, a Class IIA felony. See, Neb. Rev. Stat. § 28-201 (Reissue 2016) (criminal attempt); Neb. Rev. Stat. § 28-303 (Reissue 2016) (first degree murder); Neb. Rev. Stat. § 28-1205(1)(b) (Cum. Supp. 2024) (use of a deadly weapon to commit a felony). Regarding attempted first degree murder, Sanders' sentence of 30 to 50 years' imprisonment is within the statutory sentencing range for Class II felonies which are punishable by a minimum of 1 year's imprisonment and a maximum of 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024). Regarding attempted use a deadly weapon (knife) to commit a felony, Sanders' sentence of 10 to 20 years' imprisonment is within the statutory sentencing range for Class IIA felonies, which are punishable by no minimum and a maximum of 20 years' imprisonment. § 28-105. Sanders also benefitted from his plea agreement in which the use of a deadly weapon to commit a felony, a Class II felony, was reduced to attempted use of a deadly weapon to commit a felony, a Class IIA felony.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

We note that although Sanders argues that the court placed insufficient weight on his mental health history and other mitigating evidence, a sentencing court is not required to articulate on the record that it has considered each sentencing factor nor to make specific findings as to the facts pertaining to the factors or the weight given them. *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021).

The PSR provides that Sanders is 23 years old, single, and has no dependents. He graduated from high school. His criminal history is minimal, with two contacts with the juvenile court and a fine imposed for negligent driving. The level of service/case management inventory assessed Sanders as a medium-high risk to reoffend. Sanders scored in the problem risk range on the Substance Abuse Questionnaire Violence Scale with the PSR noting:

> Violent tendencies are evident. Problem risk and violent behavior is characterized by inconsiderateness, harshness, unruliness, and explosiveness. These individuals are often controlling, abusive and can be violent. Substance abuse, jealousy and perceived stress could result in more violent behavior. The need to control frustration and anger while learning alternatives to violence is evident.

In Sanders' statement contained in the PSR, he states that on the evening of the incident, he became "incredibly angry," "emotionally distraught," heartbroken, and more "furious than I've ever felt before or since in my entire life," when he learned that his ex-girlfriend, O'Dell, was in a relationship with someone else. Sanders states that "I know what I did was awful and a reprehensible choice. I live with regret every day since, [and] I know the circumstances don't excuse my conduct. I shouldn't have assaulted that man . . ."

Vollmer and O'Dell submitted victim impact statements. Vollmer stated that Sanders' actions "have changed my view of the world as I see it. I always look both ways when walking out of the building to watch my surroundings and I never sit with my back to a door. Since this . . . assault I am not as inviting to new people . . . due to all the surprise of the event that took place." Vollmer continues to have medical issues and lost income from his employment. O'Dell stated that she doesn't "feel safe most of the time anymore. I used to have no problems at all being outside after dark alone, now I am always on high alert and rarely go out alone after dark. If I do, I usually won't get out of my car, and only have braved the gas stations." O'Dell further stated that she moved out of her residence, which was the scene of the assault, about one week after the incident and that she will probably seek counseling and that she is "not feeling safe at work because [Sanders] knows where it is, inability to sleep well, and high stress after the incident made it difficult to relax & do my job."

Based upon factors including that the sentences imposed are both within the relevant statutory sentencing ranges, the benefit that Sanders received from his plea agreement, his medium-high risk to reoffend, the nature and seriousness of the offenses, and the harm sustained by the victim, we cannot say that the district court abused its discretion in the sentences imposed. This assignment of error is without merit.

## 2. COMPETENCY ISSUES

Sanders' second assigned error is that the district court abused its discretion by allowing a plea to be entered without reviewing his competency evaluation and making a finding of Sanders' competency.

A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense. *State v. Haas*, 317 Neb. 919, 12 N.W.3d 787 (2024). The competency standard includes both (1) whether the defendant has a rational as well as factual understanding of the proceedings against him or her and (2) whether the defendant has sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding. *Id*. There are no fixed or immutable signs of incompetence, and a defendant can meet the modest aim of legal competency, despite paranoia, emotional disorders, unstable mental conditions, and suicidal tendencies. *State v. Harms*, 315 Neb. 445, 996 N.W.2d 859 (2023).

As this court stated in *State v. Saufley*, 29 Neb. App. 592, 604-05, 956 N.W.2d 726, 737 (2021):

> If facts are brought to the attention of the court which raise doubts about the competency of the defendant, the question of competency should be determined at that time. *State v. Griffin*, 20 Neb. App. 348, 823 N.W.2d 471 (2012). We have recognized that

two fundamental constitutional principles are implicated in such a situation. The first is that a conviction of a mentally incompetent accused is a violation of substantive due process, and the second is that due process requires that a hearing be held whenever there is evidence that raises a sufficient doubt about the mental competency of an accused to stand trial. *Id.*, citing *State v. Johnson,* [4 Neb. App. 776, 551 N.W.2d 742 (1996), partially overruled on other grounds by *State v. Harms*, 315 Neb. 445, 996 N.W.2d 859 (2023)].

A court is not required to make a competency determination in every case in which a defendant seeks to plead guilty or to waive his or her right to counsel; a competency determination is necessary only when a court has reason to doubt the defendant's competence. *State v. Vo*, 279 Neb. 964, 783 N.W.2d 416 (2010). The "trigger" for a competency hearing under Nebraska law has been set forth as follows: If at any time while criminal proceedings are pending, facts are brought to the attention of the court, either from its own observation or from suggestion of counsel, which raise a doubt as to the sanity of the defendant, the question should be settled before further steps are taken. *State v. Johnson, supra*. "'However, although a hearing on the issue is sometimes said to be obligatory, if a reasonable doubt is raised, the doubt referred to is a doubt arising in the mind of the trial judge, as distinguished from uncertainty in the mind of any other person.'" *Id.* at 793-94, 551 N.W.2d at 754, quoting *State v. Cortez*, 191 Neb. 800, 218 N.W.2d 217 (1974).

See Neb. Rev. Stat. § 29-1823(1) (Cum. Supp. 2024) (if at any time prior to or during trial it appears that defendant has become mentally incompetent to stand trial, such disability may be called to attention of district or county court by county attorney or city attorney, by defendant, or by any person for defendant; judge of district or county court where defendant is to be tried shall have authority to determine whether or not defendant is competent to stand trial; judge may also cause such medical, psychiatric, or psychological examination of defendant to be made as he or she deems warranted and hold such hearing as he or she deems necessary).

The test of mental capacity to plead is the same as that required to stand trial. *State v. Dunkin*, 283 Neb. 30, 807 N.W.2d 744 (2012). A court is not required to make a competency determination in every case in which a defendant seeks to plead guilty or to waive his or her right to counsel; a competency determination is necessary only when a court has reason to doubt the defendant's competence. *Id*.

In *State v. Dunkin, supra*, albeit in the context of an appeal of the denial of a petition for postconviction relief, the Nebraska Supreme Court considered whether trial counsel was ineffective in failing to raise the issue of the defendant's competency. The Court stated:

The fundamental question is whether the defendant's mental disorder or condition prevents the defendant from having the capacity to understand the nature and object of the proceedings, comprehend the defendant's own condition in reference to such proceedings, and to make a rational defense. Here, the record demonstrates that [the defendant] had the capacity to understand the proceedings and assist in his defense.

*State v. Dunkin*, 283 Neb. at 46, 807 N.W.2d at 756-57. The Nebraska Supreme Court went on to note that prior to accepting the defendant's no contest plea, the district court made numerous

inquiries as to the defendant's background and articulated the rights he was waiving by pleading. The defendant indicated that he was waiving and giving up his rights freely and voluntarily and that he did not have additional questions of either the court or his trial counsel.

Conversely, in the instant case, Sanders did not include in his request for the preparation of the bill of exceptions a record of his plea hearing. Without a record of the plea hearing, this court is unable to determine the extent of questioning or exchanges relating to Sanders' competency during that hearing. It is incumbent on the party appealing to present a record that supports the errors assigned; absent such a record, as a general rule, the decision of the lower court as to those errors will be affirmed. *Czech v. Allen*, 318 Neb. 904, 21 N.W.3d 1 (2025). Sanders' failure to include a request for the preparation of a bill of exceptions of the plea hearing in this case prevents this court from reviewing his claim regarding the district court's determination of Sanders' competency. We further note that the PSR indicates that Dr. Hartman conducted a psychological examination of Sanders on May 24, 2024, at which time Dr. Hartman "felt [Sanders] had the capacity to stand trial." Accordingly, we affirm the lower court's determination that Sanders' plea was entered knowingly, voluntarily, and intelligently.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL

Sanders' final assignment of error is that his trial counsel was ineffective in (a) failing to adequately review discovery materials and discuss a potential plea of not guilty by reason of insanity and (b) allowing entry of his plea when Sanders' competency was in question and failing to have an evidentiary hearing on the issue.

Recently, in *State v. Swartz*, 318 Neb. 553, 566-67, 17 N.W.3d 174, 184-85 (2025), the Nebraska Supreme Court reiterated the propositions of law relative to a defendant's claims of ineffective assistance of counsel made in a direct appeal:

> When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Rezac*[, 318 Neb.] 352, 15 N.W.3d 705 (2025).

> Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*[, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d. 674 (1984)], the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Dat*[, 318 Neb.] 311, 15 N.W.3d 410 (2025). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*

> An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district

court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id.*

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

### (a) Failure to Adequately Review Discovery Materials and Discuss Plea of Not Guilty by Reason of Insanity

Sanders' first claim of ineffective assistance of trial counsel is "for failure to adequately review discovery materials and discuss potential plea of not guilty by reason of insanity." However, in his argument, Sanders contends that

> there was information that could have potentially led to an involuntary intoxication claim. Specifically, that Sanders was given intoxicating substances, and was not told what was in said substances. These substances then prevented him from forming the requisite intent necessary to be convicted of the two charges in the information.

Brief for appellant at 10. The State argues that "Sanders failed to argue the assigned error, and he failed to assign the claim that was actually argued." Brief for appellee at 20. We agree.

An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Yah*, 317 Neb. 730, 11 N.W.3d 632 (2024).

Here, Sanders assigns as error, but does not argue, that his trial counsel was ineffective in failing to adequately review discovery materials and discuss a potential plea of not guilty by reason of insanity. Conversely, he argues, but does not assign as error, that his trial counsel failed to discover and share information with him that may have provided the basis for an involuntary intoxication claim. Because neither of these claims has been properly preserved for our review, we decline to consider them, and they are not preserved for postconviction review.

### (b) Allowing Entry of Plea When Competency Was in Question and Failing to Have Evidentiary Hearing Thereon

Sanders next contends that his trial counsel was ineffective in allowing him to enter a plea when his competency was in question and failing to have an evidentiary hearing on that issue.

As we previously noted in our rejection of Sanders' claim that the district court abused its discretion by allowing a plea to be entered without reviewing the competency evaluation and making a finding of Sanders' competency, Sanders has failed to request the preparation of the record of his plea hearing and, without it, this court is unable to determine the extent of questioning or exchanges relating to Sanders' competency during that hearing.

Notwithstanding the lack of a record from the plea hearing, the State argues that Sanders cannot establish prejudice from this assigned error. We agree.

In *State v. Dunkin*, 283 Neb. 30, 45, 807 N.W.2d 744, 756 (2012), the Nebraska Supreme Court held:

In order to demonstrate prejudice from counsel's failure to investigate competency and for failing to seek a competency hearing, the defendant must demonstrate that there is a reasonable probability that he or she was, in fact, incompetent and that the trial court would have found him or her incompetent had a competency hearing been conducted.

On this record, Sanders cannot make that showing. The record indicates that on both May 24 and October 9, 2024, Dr. Hartman, a forensic psychiatrist, found that Sanders was competent. Sanders neither pleads nor points to any evidence which refutes those findings. As the State points out, there is nothing in the record which even suggests otherwise. In fact, Sanders did request and produced a record of his sentencing hearing. During that hearing, Sanders gave an allocution to the court that included an apology for his actions; he was articulate, coherent, and rational; and he even commented on his understanding of the proceedings. This is all consistent with Dr. Hartman's findings that "Sanders is intellectually bright" and that "[e]xamination does not show him to be suffering from any diagnosable psychiatric condition that would make him likely to reoffend." When considered with all of Dr. Hartman's other expressions, under these circumstances, we find that the record is sufficient to refute Sanders' contention that his trial counsel was ineffective in allowing him to enter a plea when he lacked competency to do so. This claim fails.

## VI. CONCLUSION

In sum, having considered and rejected Sanders' assignments of error, or found that the assigned errors were not properly preserved for this court's review, we affirm his convictions and sentences.

AFFIRMED.